Debra Ann DODD, Plaintiff/Appellant,

v.

Halbert B. DODD II, Defendant/Appellee.

Court of Appeals of Tennessee, Western Section.

June 5, 1987.

Application for Permission to Appeal Denied by Supreme Court Aug. 31, 1987.

Charles H. Farmer of Spragins, Barnett, Guy & Farmer, Jackson, for plaintiff-appellant.

Bruce Conley of Conley, Campbell, Moss & Smith, Union City, for defendant-appellee.

TOMLIN, Presiding Judge (Western Section).

Wife has appealed from a decree of the Chancery Court of Obion County granting Husband's petition to change custody and to modify alimony payments. At the time of the divorce in 1980, the chancellor gave Husband and Wife joint custody of the parties' three children and awarded Wife alimony *in futuro* in the amount of $1,250 per month. Following a hearing on this petition to change custody, the chancellor gave exclusive custody of the children to Husband. In addition, monthly alimony was reduced to $750 and modified to rehabilitative alimony for one year. Wife's counter-petition for exclusive custody and increased child support and alimony was dismissed. Wife presents the following issues on appeal: (1) Did the trial court err in changing custody of the parties' three children from joint custody to the exclusive custody of Husband? (2) Did the trial court err in reducing the amount of alimony payable to Wife and in changing it from *in futuro* to rehabilitative alimony for one year? (3) Did the trial court err in failing to award Wife exclusive custody of the parties' three children? (4) Did the trial court err in failing to increase alimony payments as requested by Wife?

It has now been well established in this state that, along with alimony, the issue of child custody is reviewed on appeal *de novo* upon the record in the trial court, with that court's findings having a presumption of correctness unless we find that the evidence preponderates against them. Rule 13(d), T.R.A.P., *Hass v. Knighton,* 676 S.W.2d 554 (Tenn.1984); *Bah v. Bah,* 668 S.W.2d 663 (Tenn.App.1983). For the reasons hereafter set forth, we reverse and modify the decree of the chancellor.

The technical record in this cause begins with the filing of the petition to modify. We have no information as to when the petition for divorce was filed or the grounds alleged. Husband, a cardiologist, has practiced medicine in Union City, Tennessee since prior to the divorce. Wife was a housewife. The parties have three daughters: Heather, Jennifer and Samantha. Wife was granted an absolute divorce in November, 1980 on the grounds of cruel and inhuman treatment or such conduct toward her as to render cohabitation with Husband unsafe and improper. Both parties were found by the chancellor to be fit and proper persons to have custody of their minor children. He awarded them joint custody of the children without designating a controlling custodial parent or a base domicile. In addition, Husband was ordered to pay Wife alimony in the amount of $1,250 per month and child support in the amount of $1,000 per month.

In January, 1986 Husband filed his petition to modify. By this petition he sought exclusive custody of the three minor children alleging "material changes in the circumstances justifying a change in custody." His petition further alleged that it was in the children's best interest for custody to be awarded to him. In keeping with his request, Husband also sought the termination of child support payments. In addition, Husband sought the termination or reduction of alimony payments, alleging that Wife was gainfully employed and no longer in need of the "substantial amount" of alimony previously awarded by the court.

Wife answered by denying the specific allegations of Husband. She then counter-petitioned seeking exclusive custody of the children, alleging a change of circumstances based upon Husband's alleged failure to cooperate with her and emotional problems developed by the children as a result of Husband's conduct. Wife also sought increased child support and alimony based upon her diminished financial situation compared to Husband's improved financial status. Prior to the hearing below, the chancellor appointed The Honorable Charles A. Maness, a member of the Obion County Bar, as guardian *ad litem* for the

three minor children. Carrying out his functions and duties, Mr. Maness interviewed the parties, including the three children and Husband's second wife. He filed an extensive report with the chancellor as well as testifying as a witness at the hearing below.

## I. MODIFICATION OF ALIMONY.

Both Husband and Wife have asked for relief insofar as the payment of alimony is concerned. We will dispose of these issues at the same time.

Subsequent to the granting of the divorce, the parties negotiated a property settlement agreement, which was approved by the chancellor and incorporated into an order of the court. By this agreement Husband agreed to pay Wife as periodic alimony the sum of $1,250 per month to cease only upon the death or remarriage of Wife.

It appears to this Court that although not specifically invoked by code designation, in seeking relief Husband was relying upon T.C.A. § 36–5–101(d). In essence, that section states that whenever possible, payment of alimony should be rehabilitative and temporary. In his petition, as the basis for terminating or reducing alimony, Husband asserted: "The Defendant states that the Plaintiff is now gainfully employed and is no longer in need of the substantial amount of alimony previously ordered in this cause."

The chancellor seemed to be tracking the language of the alimony statute as well when he ruled as follows:

Now, I come to the question of alimony. As I understand the question of alimony correctly, where each spouse is capable of earning a living, alimony is given—and I believe the Courts have said this—alimony is awarded for the purpose of allowing one spouse to rehabilitate themselves—to start earning a living for themselves, if they are capable of doing this. Mrs. Dodd is capable of earning a livelihood. Alimony is not meant for one spouse to not do anything and the earning spouse to keep them up. So, I'm going to modify the alimony to

the point that she will have $750.00 a month for the next twelve months. That will give her an opportunity to rehabilitate herself.

In his petition Husband alleged changed financial circumstances in support of the relief sought. Husband estimated that his "taxable income" in 1985 was "something like $26,000." He estimated that his annual income in 1984 and 1983 was "probably between $75,000 and $85,000." No income tax returns were offered in evidence. Husband testified that as of the time of the hearing his earnings for 1986 were an $11,000 withdrawal from his former partnership and $52,000 in accounts receivable to be paid directly to him as a result of the dissolutionment of the partnership. He made no estimation of his monthly income for the balance of 1986. Furthermore, while he testified that he would have additional expenses "for a few months," the proof reflected that in 1983 his net worth was $411,000 while in 1985—a span of a little more than two years—it had more than doubled to $909,000.

■ Reliance on T.C.A. § 36–5–101(d) by both the Husband and the chancellor is misplaced. This Court has previously decided a case directly on point concerning this issue. *Hays v. Hays*, 709 S.W.2d 625 (Tenn.App.1986). In *Hays*, similar to the decree before us, Husband was required to pay a stated sum of money per year as alimony *in futuro* until the death or remarriage of Wife. He later filed a petition to terminate alimony payments based on T.C.A. § 36–5–101(d). This concept of alimony was introduced into our code by a 1984 amendment. In seeking to have these payments terminated, Mr. Hays alleged that Mrs. Hays had been given ample time to rehabilitate herself, and that she had in fact become rehabilitated, further asserting that the rehabilitative purposes of the alimony had been served. The divorce decree in *Hays*, like the divorce decree in the case at bar, pre-dated 1984.

In specifically holding that T.C.A. § 36–5–101(d) was not applicable to pre–1984 decrees, this Court stated:

The courts, however, have not before placed a duty of rehabilitation upon the alimony recipient. We agree with the trial judge that this is a substantive change in divorce law, and that "[f]rom both a legal and practical standpoint, it would be unwise to declare that the rights to alimony of all persons receiving an award thereof before 1983 are suddenly changed and must be reexamined."

*Id.* at 627.

In addition, neither Husband nor his counsel caused language to be inserted in the property settlement agreement mandating that alimony be reduced or terminated upon a finding by the court that Wife had been rehabilitated. While Husband has the right to seek and obtain relief pursuant to T.C.A. § 36–5–101(a)(1), based upon substantial and material change of circumstances, this he has failed to show. The action of the chancellor reducing the amount of alimony and limiting its term is in error.

Insofar as Wife's counter-petition for increased alimony is concerned, we are of the opinion that the evidence presented on her behalf is insufficient to justify an increase of that amount provided for in the original decree.

## II. CHANGE OF CUSTODY.

While in their original pleadings both Husband and Wife sought exclusive custody of the children, no such relief is sought by Wife on appeal. The only custody question presented to this Court is whether there was a sufficient change of circumstances to justify the trial court's modification of its prior custody decree.

One of the most difficult—if not the most difficult—task that this Court is called upon to face from time to time is the determination of the proper custodial care of children in domestic relations cases and to protect the welfare and best interests of these children, who are innocent victims of divorce.

As stated above, the record reflects that Wife was granted a divorce from Husband on the grounds of cruel and inhuman treatment or such conduct toward her as to render cohabitation unsafe and improper. To say the least, this divorce was not one founded upon "irreconcilable differences." There were obviously ill feelings between the parties. Notwithstanding this, the trial court saw fit to put the care, custody and control of all three minor children jointly with both parents. The chancellor did not designate either parent as one with final decision-making authority, nor did the chancellor designate the home of either parent as the "home base" for the children. The pattern of custody developed by the parties and followed during most of the six years prior to the hearing below called for the children to be with their mother every week day except for Tuesday evening to Wednesday evening, when they would visit with their father. Husband and Wife would then alternate weekends with the children. The record is not clear as to how holidays were handled.

The chancellor made one finding which is concurred in by Husband, Wife and this Court: "[T]he situation that now exists is not to the best interest of the children." One of the parents voiced the opinion that the joint custody arrangement was part of the problem. From reading this record we are of the opinion that the joint-custody provision was a very large part of the problem and created most of the circumstances Husband sought to use as grounds for changing custody.

Before addressing the specific issue of custody, we feel constrained to address the institution of joint custody. Notwithstanding the fact that joint custody of minor children is permitted by statute, we have found it necessary to reverse a large number of such decrees during the past several years. The experience of this Court has been that joint custody rarely, if ever, works—for the children. There needs to be one residence, one haven in all the storms of life, including those storms whipped up by the winds of divorce. There needs to be one parent with primary control and responsibility for the upbringing of the parties' children, whenever possible. Custody, in reality, means responsibility for the care, nurture and development of

the mental, emotional and physical needs of the child. The custodial parent should expect and receive cooperation and assistance from the non-custodial parent in every respect to serve the best interests of their child or children.

In contested divorces, when feelings are usually heated and emotions run high, it would appear to this Court that joint custody would not serve the best interests of the child. Even when the circumstances of the case would suggest joint custody, for it to be successful would require a harmonious and cooperative relationship between both parents.

The benchmark by which this Court gauges the actions of the trial courts in child custody cases was well stated by the former Presiding Judge of this Section, The Honorable Charles Nearn, in *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn.App. 1983), wherein he wrote:

> In child custody matters the paramount concern of the Court is the welfare of the children and the rights of the parties will yield to that concern. *Riddick vs. Riddick* (1973 Tenn.App.W.S.) 497 S.W.2d 740, *cert. denied.* We hold that there is no hard and fast rule as to what constitutes changed circumstance. The ultimate goal of the Court is to find in the best interest of the children and "changed circumstances" is something that may or may not be found in that search. We believe T.C.A. § 36–828 adequately sets forth the authority of the Trial Court over its custodial orders. The statute provides that such orders are "subject to such changes or modifications as the exigencies of the case may require."

Before examining the record before us, we acknowledge that it is well settled in this state that where a decree has been entered awarding custody of children, that decree is *res judicata* and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change in custody. *See Walker v. Walker,* 656 S.W.2d 11, 16 (Tenn.App.1983); *Long v.*

*Long,* 488 S.W.2d 729, 731–732 (Tenn.App. 1972). While a search of the record proffers but few changes that have occurred since the divorce was granted in November, 1980, in our opinion there is more than sufficient justification for modifying and changing the initial custody order. As we have already noted, the most important "changed" circumstance is the fact—the proven fact—that the joint-custody plan fashioned by the court and the parties has worked to the detriment of the children.

There has been no substantial proof introduced to indicate that either Husband or Wife should be considered an unfit or unsuitable parent so as to deny either one of them custody. It would appear that life has been kinder to Husband than to Wife. He has remarried, fathered another child, and has begun an independent practice as a cardiologist, with an anticipated enhancement of his personal income. On the other hand, Wife, as a divorced mother, has found it necessary to complete her education as a registered nurse and to seek employment in order to supplement her income from alimony and child support payments. This obviously necessitates her absence from the home. Neither set of circumstances should adversely affect the privilege of either parent to be considered as the custodial parent.

Insofar as the children are concerned, it is obvious that joint custody coupled with the manner in which it has been implemented has had a negative effect on the two older daughters, Heather and Jennifer. The most serious problem presented by this proof reflects that Jennifer is having some difficulty with school in repeatedly failing to do her assigned work. Husband testified that he and his new wife worked with Jennifer regularly on the one night during the school week that she stayed with them. While Jennifer's third grade teacher testified that her progress and her work seemed better when she was with her father than with her mother, she testified that both Husband and Wife had responded to the notes that she sent home concerning Jennifer's school work. Wife testified that she had participated regularly in school conferences concerning Jennifer's work.

Regarding Heather, there is proof to the effect that she was experiencing frustration and other similar reactions of a child caught in the middle of a divorce, with the reactions being emphasized by joint custody. Wife testified that in late 1985 prior to the hearing below, and with no prior discussion with her mother, Heather announced that she was going to live with Husband. There also was no communication to Wife from Husband regarding this move. During the five-month period prior to the hearing, Wife stated that Heather would not come to the door to talk to her when she visited Husband's home, nor would she talk with her by telephone. She stated that Heather had visited in her home for only two and a half hours during that period—once at Christmas and again on her sister's birthday. Neither Husband nor Wife offered any testimony that would reveal a reason for Heather's decision. There is no testimony of any unkindness toward or mistreatment of Heather by Wife. Two of Heather's teachers did testify that from their observations, Heather seemed better adjusted after she went to live with her father. One of the two teachers voiced the opinion that the problem lay principally with dual custody.

The most objective and enlightening testimony came from Charles Maness, the guardian *ad litem* appointed by the court, who talked with both parents and all three children. While Heather made clear to him that she desired to remain with her father, he stated that the other two children had been indecisive insofar as where they wanted to stay. However, he stated that just prior to trial the two younger children stated to him that they wished to remain with their mother. It was his testimony that both of these girls loved their parents and that both parents loved them. His report quoted Jennifer as stating that she would rather live in an orphanage than be swapped back and forth. He also was of the opinion that Jennifer and Samantha were closer to each other than to Heather. Considering the comparative ages of the children, this is understandable. Insofar as the daughter Samantha is concerned, there is not one shred of evidence concerning any problems between her and either parent.

On two occasions during the hearing below the guardian *ad litem* requested the chancellor to interview the children in chambers, but on each occasion the chancellor declined to do so. Wife has made the chancellor's refusal to interview the children an issue on appeal. While it is possible that testimony of some probative value might have been developed by such an interview, we are of the opinion that whether or not to interview the children was a matter that addressed itself to the discretion of the chancellor, and while this Court might have made a different decision, we cannot say that he abused his discretion. *See Crabtree v. Crabtree*, 716 S.W.2d 923 (Tenn.App.1986).

Tracking the language of T.C.A. § 36–6–101, this Court is prepared to order custodial changes "as the exigencies of the case may require." We have already concurred with the chancellor that joint custody does not and has not worked. We are also of the opinion that we must consider the welfare and best interests of these children as individuals, not as a group of three. While proof shows no detriment having been suffered by Heather while living with her mother, the proof does show that she seems less nervous and more secure living with her father. For whatever reason, she has expressed a strong desire to remain in the home of her father. While she is not of the age that mandates consideration of her personal choice, under the circumstances of this case we think it should be given consideration. Accordingly we are of the opinion that the exclusive custody, care and control of Heather Rachel Dodd should be placed in her father.

Insofar as the other two daughters are concerned, considering our finding that both parents are fit parents and considering the proof that these two younger daughters, being closer in age, enjoy a close relationship, we think they should be kept together. We therefore place them under the exclusive care, custody and control of their mother.

Another aspect of the case which must be considered is Wife's desire to move to Florida. She was questioned at length about her intentions to move to Florida, her native state, to the community where her parents are living. She testified that the hospital where she was employed was one of the hospitals where Husband practiced medicine. She testified that she felt somewhat intimidated by this situation, which apparently was unavoidable. There was proof to the effect that she had contacted a hospital in Florida that was willing to employ her. In her counter-petition Wife asked for exclusive custody, as did Husband. No objection was raised by Husband to Wife's moving to Florida, nor was any proof offered by him to show that the relocation of Wife with any or all of the children would not be in their best interests. *See Walker v. Walker*, 656 S.W.2d at 17. We are of the opinion that Wife's moving to Florida to her former home where her parents now live should not prevent her from having custody of the two younger daughters. To the contrary, residing in the same city as her parents should provide a family structure which will reinforce Wife's home.

This Court is of the opinion that under the circumstances of this case, visitation privileges should be established to some degree. During the summer months, Husband is to have the three children in June. In July, Jennifer and Samantha will remain with their father and Heather will spend the month with her mother, giving each parent a month to have the non-custodial child/children alone. In August, Mother will have all three children at her home. We are also of the opinion that each Christmas all three children should be together with one parent. Beginning in 1987, Heather is to visit her mother and her two sisters for one week of Christmas vacation, including Christmas Eve and Christmas Day. The following year, 1988, the two younger daughters are to visit their father for one week under the same guidelines. Annual Christmas visitation is to rotate every year in the same manner. Insofar as other holidays are concerned, this Court is going to leave visitation arrangements, if

any, to the sound judgment of the parents, who must learn to cooperate and work together for the best interests of their children. In view of the great disparity in the financial resources of Husband and Wife, the expense of transportation of all the children in the exercise of visitation rights is to be borne by Husband.

Accordingly, the decree of the chancellor reducing the amount of alimony to be paid each month and modifying Husband's alimony obligations from *in futuro* to rehabilitative for a period of one year is reversed. The alimony obligations of Husband to Wife as set forth in the original decree are reinstated.

The decree of the chancellor giving Husband exclusive care, custody and control of the parties' three minor children is reversed in part. Husband is hereby awarded the exclusive custody of the parties' oldest daughter, Heather Rachel Dodd. Wife is awarded the exclusive custody of the parties' two younger daughters, Jennifer Nicole Dodd and Samantha Allison Dodd. Husband and Wife are to have visitation privileges as set out earlier in this opinion and other reasonable visitation as might be formulated by mutual consent of the parties.

That portion of the decree of the chancellor abating all future child support payments by Husband to Wife is reversed. Upon finalization of the judgment in this cause, Husband shall thereafter pay to Wife a sum equal to two-thirds of the amount of child support heretofore ordered to be paid by the chancellor in the original decree. Costs in this cause are taxed to Husband, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.