Susan Greer DALTON,
Plaintiff/Appellee,

v.

Joseph M. DALTON,
Defendant/Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 26, 1993.

Application for Permission to Appeal
Denied by Supreme Court July 6, 1993.

Mary Frances Lyle, David R. Lyle, Bruce, Weathers, Corley, Dughman & Lyle, Nashville, for plaintiff/appellee.

Anna L. Pace, Eason, Lawson, Fishburn & Dalton, Nashville, for defendant/appellant.

## OPINION

TODD, Presiding Judge.

In this post-divorce decree proceeding, the defendant-father has appealed from the judgment of the Trial Court changing joint

custody to sole custody of the plaintiff-mother and ordering the defendant to pay fees of counsel for the mother.

The brief of appellant contains no statement of the case as required by T.R.A.P. Rule 27(a)(5). The "Statement of Facts" in appellant's brief does not conform to T.R.A.P. Rule 27(a)(6). As a result, the statement of facts by appellee also departs from the form contemplated by Rule 27(a)(6), which contemplates a brief, orderly, statement of the pleader's theory of the facts with supporting citation and without argument.

The record reflects the following proceedings:

On November 9, 1990, the parties were divorced by decree which ratified and adopted a marital dissolution agreement which provided:

A. The parties shall have joint custody of their minor children, BRINN DALTON, BRITTNEY DALTON and KATELYNN DALTON, with the Wife to have primary physical custody of the minor children.

. . . .

E. The Husband shall be allowed reasonable visitation with the minor children.

On June 17, 1991, the mother filed a petition stating:

3. Joint custody has turned out to be extremely detrimental to the welfare of the minor children as evidenced by the following: . . .

The petition recited a lengthy list of instances supporting the quoted allegation and prayed for sole custody.

The father filed a lengthy response and counter-petition seeking "primary possession" of one of the children.

On September 10, 1991, the Trial Court entered an order denying a change of physical custody as prayed in the father's counter-petition.

On November 25, 1991, the Trial Court entered an order stating:

6. On the issue of whether joint custody will be continued, whenever marital dissolution agreements are presented to the Court in which there is to be joint custody, this Court most often will take a few moments to discuss joint custody with the parties. Not in every case, because as a matter of fact, the Court is quite sure that when this final decree of divorce was heard on or about the 9th day of November, 1990, that the Court did not discuss joint custody at that time with the parties.

The Court is not unwilling, however, to allow parties to attempt to have joint custody, and when it does not work, the Court is not reluctant to make a change. It does not work in this situation. It is unfortunate that it does not, but it is not working. It is the Court's opinion that Susan Dalton did not have to show a material change of circumstances in order to take up the issue of joint custody, but what she had to show is that it was not a workable custodial arrangement. It is not a workable custodial arrangement in this case. Joint custody is not working. The Court hereby places the custody of the minor children with Susan Dalton.

7. The Court, however, does put one provision in the custody, and that provision relates to major medical decisions concerning the minor children. Mr. Dalton shall be informed prior to the implementation of any major medical decision, and he shall have, at his option, the right to secure a second or more medical opinion, and at his expense. Susan Dalton is required to provide Mr. Dalton with major medical information prior to its implementation. There could be an exception in the major medical implementation circumstance, and that exception would be in a life or death situation such as if the child were in the hospital and Mr. Dalton could not be reached, as for instance if he were out of state and unable to come back within time to participate. That would be a decision where the Court believes the physicians would also be having some input. If the parties disagree on medical treatment of a child, then either may file a motion with the Court to make some decision.

....

11. The Court finds that this is [an] appropriate case of awarding attorney fees. The Court does not award the full amount, but the Court hereby awards to Ms. Dalton $4,500.00 in attorney fees and expenses, which shall be a judgment against Mr. Dalton for which execution may issue. The costs will be taxed to Joseph Dalton.

The order also contained a lengthy and detailed schedule of visitation with the father.

From this order, the father has appealed and presented two issues as follows:

1. Whether the Chancellor erred in abolishing joint custody and awarding sole physical custody to the plaintiff/appellee, without any evidence of a change in circumstances, and without any evidence or finding that the change in custody would be in the best interest of the parties' three minor children.

2. Whether the Chancellor erred in awarding the plaintiff/appellee attorney fees when there was no evidence that the plaintiff/appellee had an inability to pay said fees, and when there was no finding that the defendant/appellant was in contempt of Court.

The mother states the issues as follows:

1. Whether the preponderance of the evidence supports the trial court's finding that joint custody is not workable in this case and that sole custody is in the best interests of the children.

2. It was within the discretion of the trial judge to award to Wife attorney's fees as additional child support where Wife has brought an action successfully on behalf of the children and to the benefit of the minor children.

3. This Court should award Appellee legal fees on appeal where she has had to incur additional fees on behalf of the minor children.

First Issue: *Change of Circumstances and Welfare of Children*

The father asserts that the change of custody was erroneous because no change of circumstances was shown. It is true that the order of the Trial Judge, quoted above, stated that a showing of changed circumstances was unnecessary; but the Court did find:

It (joint custody) is not a workable custodial arrangement in this case. Joint custody is not working.

Inherent in the quoted finding is a finding that joint custody has not worked for the best interest and welfare of the children.

■ "Changed circumstances" includes any material change of circumstances affecting the welfare of the child or children including new facts or changed conditions which could not be anticipated by the former decree. *Hicks v. Hicks,* 26 Tenn.App. 641, 176 S.W.2d 371.

■ The unworkability of joint custody because of the recalcitrance of one or both parents is not a change of circumstances anticipated in the former decree. Such is therefore a proper ground for re-evaluating the custody arrangements in the former decree. *Dodd v. Dodd,* Tenn.App.1987, 737 S.W.2d 286.

The father's brief states in effect that custody is not his major concern, but that his major concern is "that he has a right to be consulted in parental decision-making." In the present case, this is the unworkable aspect of joint custody, which implies joint decision-making.

Even in a harmonious, stable marriage, some decisions must of necessity and convenience be made by one parent without consulting the other. Occasionally, in a harmonious home there will be honest differences of opinion which can be and are peacefully resolved.

This, however, is not a stable, harmonious home. It is a broken home, resulting from irreconcilable differences of the parents. It is indeed an optimistic view that the parents who divorced because of their differences can harmoniously make joint decisions regarding their children. The facts of this case prove the preceding statement.

■ While attending a ball game in which one of the children participated, another child, who was with her mother, was

ordered by her father to put on her coat. When the child did not obey, the father engaged in an intemperate and profane verbal attack upon the mother and daughter, to the embarrassment of the child and mother in the presence of friends.

On another public occasion, the father engaged in unseemly language and conduct toward the mother and the two daughters.

On other occasions, the father interfered with the judgment of the team coach in respect to the position his son should play; thereby causing the son to stop playing and cry.

On other occasions, the father has told the children they do not have to obey their mother because he has joint custody and control.

Because of the father's unauthorized intrusion into the mother's home during her absence, the Trial Court enjoined the father from entering her home.

The foregoing are illustrative of the long list of incidents which show conclusively that neither joint custody nor joint decision-making is possible by these parents. In response to a question by his counsel regarding his discussing a matter with the mother, the father responded:

Are you crazy? I would rather kiss the Irish Blarney Stone. There is no way she would sit down and level-headedly discuss anything with me.

■ The decision of the Trial Court in respect to custody comes to this Court for review de novo upon the record accompanied by a presumption of correctness unless the evidence preponderates otherwise. *Nichols v. Nichols*, Tenn.1990, 792 S.W.2d 713.

It is clearly shown by the evidence that the welfare of the children is best served by placing sole custody and control with the mother without troublesome interference by the father.

The evidence does not preponderate against the custody and control decision of the Trial Court which is presumed correct.

Second Issue: *Award of Attorney Fees*

■ The father concedes that the award of fees in custody cases is within the discretion of the Trial Court. However, the father insists that such award must be supported by a showing that the successful party is unable to pay such fees. Such is the rule regarding alimony proceedings, but not in regard to child custody and support.

Where the services of a parent's attorney inures to the benefit of a minor child or children, the award of reasonable attorney's fees is in order. *Salisbury v. Salisbury*, Tenn.App.1983, 657 S.W.2d 761.

■ It is true that parents are equally responsible for furnishing necessaries for their children. T.C.A. § 34-1-101. However, the expense of dealing with a situation created by one of the parents is properly chargeable to that parent in the exercise of sound discretion. The legal expense incident to this controversy is shown to be $6,606.80. The father was required to pay $4,500.00 of this amount. The children are benefitted by the ruling produced through the efforts of counsel for the mother. The requirement that the father pay $4,500.00 of the fee was justified and proper.

*Fees on Appeal*

For the same reasons stated for allowance of fees in the Trial Court, fees should be allowed for defending the judgment of the Trial Court on appeal. Upon remand, the Trial Court will determine a proper award of fees and expenses incurred in defending its judgment on appeal.

The judgment of the Trial Court is affirmed. The appellee is awarded fees and expenses incident to this appeal to be paid by the appellant. Costs of this appeal are taxed against the appellant. The cause is remanded to the Trial Court for assessment and rendition of judgment for fees and expenses on appeal, and for such further proceedings as may be necessary and proper.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.