# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

**FILED**

**Feb. 12, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**WILLIAM THOMAS WINCHESTER,**  )
  )
      Plaintiff/Appellant,      )      Chester Equity No. 8684
  )
**vs.**  )
  )
**GLENDA RACHELLE WINCHESTER,** )      Appeal No. 02A01-9604-CH-00092
  )
      Defendant/Appellee.      )

## APPEAL FROM THE CHANCERY COURT OF CHESTER COUNTY
## AT HENDERSON, TENNESSEE

### THE HONORABLE JOE C. MORRIS, CHANCELLOR

For the Plaintiff/Appellant:      For the Defendant/Appellee:

Tim Edwards      Michael L. Weinman
Memphis, Tennessee      Henderson, Tennessee

**VACATED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

# OPINION

This is a child custody case. The trial court awarded Appellant William Thomas Winchester ("Husband") and Appellee Glenda Rachelle Winchester ("Wife") joint custody of the minor child of the marriage, which both parties appeal. We vacate the trial court's award of joint custody and remand the case to the trial court to conduct further findings of fact concerning each party's comparative fitness and to award custody to either Husband or Wife.

Husband and Wife had been married for approximately two and a half months when they separated. At the time of their separation, Wife was pregnant with the parties' unborn child, Maggie. Maggie was born on October 24, 1994, a little over four months after Husband filed for divorce. Each party sought sole custody of Maggie. Wife retained custody pending the divorce, and Husband was granted visitation privileges. To aid in the custody determination, the trial court appointed a guardian ad litem for Maggie. The court also ordered Dr. Elias Bond ("Dr. Bond") to conduct a psychological evaluation of Wife, but not of Husband.

Approximately three weeks before trial, Wife's counsel withdrew. The trial court gave Wife fifteen days to retain new counsel, but she failed to do so and appeared *pro se* at trial. At the trial, Husband testified at length in response to his attorney's questions, with no objections or cross-examination by Wife. Husband presented several witnesses, including a psychologist, Dr. Lynn Zager, who testified that she had examined Husband and found that he would be a fit parent. Wife testified briefly in response to questions from the trial court and was cross-examined by Husband's attorney. When the trial court asked Wife if she had anything further, she responded, "My mom witnessed some things that she hasn't told about yet." The trial court apparently did not understand this to be a request that Wife's mother be permitted to testify, so no witnesses testified on Wife's behalf.

In her testimony, Wife alleged one instance of physical abuse during their short marriage, in which Husband purportedly pulled her, pregnant with Maggie and holding her child from a previous marriage in her arms, by her feet down the stairs. Wife also claimed that Husband is controlling, hot-tempered, and mentally abusive and that he ordered her out of their house on several occasions. The record also includes Wife's accusation that Husband stalked her and indicates that she called the police to her residence, complaining that he kept driving by her house.

In his testimony, Husband claimed that Wife is a poor caretaker of the child and has in the past tried to block his access to Maggie. He alleged that she had contributed to Maggie's asthma and bronchial problems by smoking around her and by allowing others to smoke around her, in contravention of doctors' recommendations and the trial court's orders. He alleged that Wife had stayed overnight with her current boyfriend in Maggie's presence, once again in violation of court order. He admitted to having conducted surveillance on Wife and having hired a private investigator to gather incriminating evidence against her. He noted that Wife has been married three times, that she has had children by three different men, and that Wife's parents have custody of her oldest child. He alleged that Wife has a history of preventing the fathers of her children from having access to them.

The trial court also considered the psychological evaluation of Wife by Dr. Bond. In his report to the trial court, Dr. Bond indicated that Wife "could very well have a personality disorder" but found that Wife was fit to retain custody. Dr. Bond did not evaluate Husband, but had discussions with Mr. Winchester, and stated that he saw "no reason . . . that present custody status of [the parties'] daughter be changed."

The trial court also considered the report of the Guardian Ad Litem. After interviewing both parties and Wife's mother, as well as reviewing Dr. Bond's evaluation, numerous documents, and a videotape of Maggie and Husband, the Guardian Ad Litem stated:

> The Guardian Ad Litem does not feel that a true joint custody situation could work with these parties due to the animosity and ill will between them and their families. Further, the parties live quite a distance from each other and as the child grows older, this would be an impossible situation.

The Guardian Ad Litem recommended joint custody in decisions regarding Maggie. However, the Guardian Ad Litem recommended that Wife have principal custody "with the understanding that her mother, Frances Coleman, will monitor her actions and report any problems . . . ." She recommended that Husband be given liberal visitation.

After considering all of the evidence, the trial court awarded the parties joint custody of Maggie, with each parent having custody of Maggie on alternating weeks. Husband appealed to this Court, asking for sole custody. Wife also seeks sole custody.

2

On appeal, Husband asserts that the trial court erred and abused its discretion in awarding joint custody of Maggie to Wife and him. He maintains that it is in Maggie's best interest that he be awarded sole custody with liberal visitation rights being granted to Wife.

Wife agrees that it was error for the trial court to award joint custody to the parties but contends that the trial court should have given her sole custody. Wife also claims that her due process rights were violated at the hearing of this cause, at which she appeared *pro se*. If she is not given sole custody by this Court, in the alternative, Wife asks this Court to remand the case back to the trial court for further findings of fact.

In child custody cases, appellate review is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact. Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. App. 1993). Of course, the child's best interest is the primary consideration in custody cases. *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. App. 1983).

By statute, there is "neither a preference nor a presumption for or against joint legal custody, joint physical custody or sole custody . . . ." Tenn. Code Ann. § 36-6-101(a)(2) (1996). Nevertheless, the practical problems of joint custody have been repeatedly acknowledged by this Court, particularly "where there is hostility and ill will between the parents." *Jones v. Jones*, No. 01-A-01-9601-CV00038, 1996 WL 512030, at *4 (Tenn. App. Sept. 11, 1996); *see Malone v. Malone*, 842 S.W.2d 621, 623 (Tenn. App. 1992); *Dodd v. Dodd*, 737 S.W.2d 286, 289-90 (Tenn. App. 1987). Joint custody arrangements "depend for their success on a high degree of cooperation between the parents, so it is perhaps not surprising that they should frequently fail." *Jones*, 1996 WL 512030, at *5. Both parties contend that joint custody is unworkable in this case. The Guardian Ad Litem concluded that joint custody would not work with these parties. Indeed, the record is replete with evidence of the animosity that each party bears toward the other. We agree that joint custody in this case is not feasible, and we therefore vacate the trial court's order.

Both parties seek sole custody of Maggie. The primary concern in determining custody is the best interest of the child. Tenn. Code Ann. § 36-6-106 (1996); *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. App. 1993). A comparative fitness analysis is used to decide which parent should be awarded custody. *Ruyle v. Ruyle*, 928 S.W.2d 439, 442 (Tenn. App. 1996).

However, our review of this issue is limited to the record before us. Tenn. R. App. P. 13(d). While the record contains some of the information necessary for a comparative fitness analysis, the record is insufficient for this Court to determine which parent should be awarded custody. For example, Husband testified that he was capable of caring for Maggie on a daily basis and that he had a close relationship with various female relatives. However, at trial he also testified that he was a full-time student and was also employed, and he gave no indication of his plans for Maggie's care while he was at work or school or the amount of time he would be able to spend with her.

Moreover, we are mindful that "the trial judge, not the appellate court, has the opportunity to observe the witnesses." *Bah*, 668 S.W.2d at 665. In evaluating the maturity and emotional stability of the mother and father, the trial court

> is in a far superior position to assess these qualities than this court because of the ability to view the witnesses and assess their demeanor, mannerisms and other visual and audio characteristics not apparent in the transcript.

*Id.* at 667.

Therefore, we remand this case to the trial court for further findings of fact regarding each parent's capabilities for caring for Maggie on a daily basis and any other findings pertinent to a determination of custody. The court shall then conduct an analysis of the comparative fitness of each parent, taking into account the factors listed in Tenn. Code Ann. §§ 36-6-101(d) and 36-6-106 and any other relevant factors. *See Bah*, 668 S.W.2d at 666. For example, if either Husband or Wife has not fully cooperated with the custody or visitation arrangement or has acted in such a manner as to damage Maggie's relationship with the other parent, this should be taken into account. *See Jones*, 1996 WL 512030, at *4-5. After conducting the comparative fitness analysis, the trial court should then award custody accordingly, with reasonable visitation for the noncustodial parent.

Wife also contends that her due process rights were violated. In light of our decision to remand the matter to the trial court, it is unnecessary for us to address this issue. The concerns raised by Wife, such as the trial court not permitting her mother to testify and her purportedly being precluded from cross-examining Husband or most of his witnesses or from testifying except in response to questions from the trial court or Husband's attorney, should be rectified on remand.

4

The order of the trial court awarding Appellant and Appellee joint custody of their minor child is vacated. This cause is remanded back to the trial court for further findings of fact and for disposition consistent with this Opinion. The costs of this appeal are adjudged equally against Appellant and Appellee, for which execution may issue if necessary.

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P.J., W.S.**


_____
**DAVID R. FARMER, J.**