IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

BRIAN PATRICK GRANT,

        Plaintiff,

v.

TONYA RENEE' FORTUNE GRANT,

        Defendant.

Shelby Circuit No. 145922 R.D.
      C.A. No. 02A01-9603-CV-00053

Hon. Wyeth Chandler, Judge

**FILED**

**April 16, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STUART BREAKSTONE, Law Office of Don Owens, Memphis, Attorney for Plaintiff.

LINDA L. HOLMES, The Wagerman Law Firm, Memphis, Attorney for Defendant.

*REVERSED IN PART AND AFFIRMED IN PART*

Opinion filed:
_____

TOMLIN, Sr. J.

      This a domestic relations case wherein child custody is the principal issue. Brian Patrick Grant (hereafter "Husband") filed suit for divorce in the Circuit Court of Shelby County against Tonya Renee' Fortune Grant (hereafter "Wife") alleging that Wife was guilty of inappropriate marital conduct. Wife filed a counter-complaint against Husband seeking a divorce on the same grounds. Following a bench trial, the court awarded both parties a divorce on the grounds of inappropriate marital conduct, and awarded the parties joint custody of their minor child with Wife designated as the primary custodial parent. The court also set the child support for Husband, established a visitation schedule of Husband and divided the parties' marital assets.

      On appeal Husband has raised one issue, namely: Whether the trial court was in error in awarding the parties' joint custody of the child and in failing to award Husband sole custody. Wife has raised three issues on appeal: Whether the trial court erred in (1) establishing a "floating" visitation schedule in accordance with Husband's employment schedule; (2) in setting Husband's child support payment at 15% of his net income, and (3) in awarding Husband $9,000.00 of the parties' equity in the marital residence. For the reasons hereinafter stated, we reverse in part and affirm in part.

      The facts are not in dispute. The parties were married in December, 1988.

Their only child, a daughter, was born in March 1991. The parties separated in April 1994 only nine days after moving into their new marital residence, as a result of Wife's admission that she was having an affair with her employer. At the time the parties purchased their new residence neither party had discussed plans for divorce. Husband's moving out shortly after they had moved into their new home was also prompted in part by the discovery of a diamond ring in the back seat of Wife's car. Upon informing Wife of his discovery, Wife announced that she had been having an affair with Mr. William Adair, her then current employer, who had purchased the ring for her. Husband filed his complaint for divorce shortly thereafter.

Several months later, Husband filed a petition seeking to have the trial court enter a temporary restraining order prohibiting Wife from allowing any non-related males to visit the home in which she and the child lived after 10P.M. The court entered such an order. The following month, Husband filed a Petition for Contempt asserting that Wife had violated the previous order of the court. Following a hearing the court dismissed the contempt petition, but issued a stern warning to Wife that she faced the loss of temporary custody of her child if she violated the order again. Just a few days prior to the divorce hearing Husband filed a second petition for contempt, alleging another violation of the trial court's prior order.

Following a bench trial, the court entered a decree of divorce and gave Wife temporary custody of the parties' child pending a final adjudication on the issues of child support, child custody, visitation rights and division of marital property. Subsequently, the trial court determined that both parties were fit and proper persons for custody of their daughter and awarded joint custody, with Wife serving as the primary custodial parent. Husband was ordered to pay $235.00 per month in child support, which equaled 15% of his net income and in addition, was awarded $9,000.00 of the parties' equity in the marital residence. Husband's second contempt petition was dismissed however, the trial court

2

ordered Wife to prevent her current boyfriend from visiting Wife when the parties' child was present. The court also set out explicit instructions concerning Husband's visitation rights.

## I. The Custody Issue.

Because they are closely interrelated, we will dispose of both Husband's and Wife's issues at the same time as they relate to the matter of custody. As noted, the trial court, apparently with some reluctance, gave the parties joint custody of their child, with Wife being designated as the primary custodian. This court has long held that joint custody by divorced parents of children of the marriage is not looked upon with favor. This is not simply a bias of the court, but is a view developed as a result of years of dealing with cases of this type. We must always keep in mind that in custody issues the welfare of the child is paramount. Bah v. Bah, 668 S.W.2d 663 (Tenn. App. 1983). As this court said in Bah, the best interest of the child is the alpha and the omega, the polestar of our concern. Id. at 665. Joint custody of children by divorced parents can only work when the parties have maintained some semblance of respect for one another, where the dissolution of the marriage has resulted in an improved relationship involving all the parties. This court observed the following in Dodd v. Dodd, 737 S.W.2d 286 (Tenn. App. 1987).

> [W]e feel constrained to address the institution of joint custody. Notwithstanding the fact that joint custody of minor children is permitted by statute, we have found it necessary to reverse a large number of such decrees during the past several years. The experience of this Court has been that joint custody rarely, if ever, works--for the children. There needs to be one residence, one haven in all the storms of life, including those storms whipped up by the winds of divorce. There needs to be one parent with primary control and responsibility for the upbringing of the parties' children, whenever possible. Custody, in reality, means responsibility for the care, nurture and development of the mental, emotional and physical needs of the child. The custodial parent should expect and receive cooperation and assistance from the non-custodial parent in every respect to serve the best interests of their child or children.
>
> In contested divorces, when feelings are usually heated and

3

emotions run high, it would appear to this Court that joint custody would not serve the best interests of the child. Even when the circumstances of the case would suggest joint custody, for it to be successful would require a harmonious and cooperative relationship between both parents.

*Id.* at 289-290.

In reviewing this record it would be an understatement to suggest that ill feelings existed between Husband and Wife. During the course of this marriage Wife had affairs with at least two men, the first affair precipitating Husband's moving out the marital home. Several witnesses testified as to Wife's consistent use of foul language toward Husband in the presence of their child, along with physical and verbal abuse. By the same token, the record also reveals that Husband had an affair all of his own, and on top of this Wife complained of physical abuse and neglect.

The record indicates that the trial court was awarding joint custody as a temporary measure to see if it might not work. However, the court's lack of confidence in both parties' ability to work together is reflected by an order of the court that designated Wife's mother as a *de facto* referee in making decisions regarding the daughter in the event that Husband and Wife were unable to resolve an issue between themselves. The record reveals extreme tension and discord existing between the parties. Accordingly, we have no hesitation in reversing the trial court's order awarding joint custody.

It is a more difficult decision for this court to ascertain which parent should be awarded sole custody of the child, with the other parent having reasonable visitation. The Bah court adopted the doctrine of "comparative fitness", which incorporates what can best be described as a totality of the circumstances test. *See* Bah at 666.

In Bah we also held that the tender years doctrine, which had previously created a rebuttable presumption that the mother should receive custody of a small child "of tender years", was hereafter only a factor—but only one factor of

4

among many—to be considered in the overall determination of what is in the child's best interests. The Bah court set forth the following guidelines to direct the court in resolving a child custody decision:

> To arrive at the point of deciding with whom to place a child in preparation for a caring and productive adult life requires consideration of many relevant factors, including but certainly not limited to [1] the age, habits, mental and emotional make-up of the child and those parties competing for custody; [2] the education and experience of those seeking to raise the child; [3] their character and propensities as evidenced by their past conduct; [4] the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; [5] the availability and extent of third party support; [6] the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; [7] and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture. (*Brackets added*).

*Id.* at 665-6.

It now befalls our responsibility to make a comparative analysis of the parental skills of the parties in question, each vying for custody of their child. It appears that both Husband and Wife earn sufficient salaries to insure an adequately comfortable lifestyle for the child. We observe, and rightly so, the concerns raised by Husband over Wife's recent indication that she contemplated marrying her current boyfriend, Lance Bancroft. Specifically, Husband questioned the ability of Wife to successfully raise their daughter in such a marriage when Bancroft would bring another small child to live with the family, his blind seven year old son who requires substantial care and attention. While this is a valid concern, of greater concern for this court is the apparent character and dependability of Mr. Bancroft, who willfully and openly violated the trial court's temporary injunction prohibiting Wife from allowing non-relative male visitors to spend the night at her home when the parties' daughter was present. Evidence was presented at trial to the effect that Bancroft repeatedly spent the night with Wife during the pendency of the trial court's order

5

prohibiting same.

Although the trial court dismissed Husband's second petition for contempt, there was testimony offered by Husband through a hired private investigator who testified that he saw Bancroft leave Wife's home on two separate occasions after spending all night there. The investigator also testified that the daughter was present at the home at that time. Wife denied that such liaisons had taken place.

Recognizing that a choice must be made, this court albeit reluctantly, awards Wife the privilege of having sole custody of the parties' minor child. In so doing we specifically say to both Husband and Wife, in particular to Wife, that the record in this case causes this court concern, for it shows that neither party may be deemed fit to retain custody of this child over a long period of time.

Such incidents as foul language and marital infidelity, coupled with emotional abuse and bitter infighting, require this court to consider and make mention of a third option: the service of a foster home, which perhaps might provide the child a more harmonious as well as safe atmosphere in which to grow up.

Therefore, we respectfully direct the trial court upon remand to establish contact with the appropriate division of the Tennessee Department of Human Services ("TDHS") and either by agreement or appropriate order provide that TDHS will monitor the home life and stability of the child on a quarterly basis during the next three years after the entry of the final decree and to report to the court its findings.

II. Visitation and Other Issues.

The current visitation schedule fashioned by the trial court provides that the child be picked up the night before Husband's "off day" and returned to Wife on the morning when Husband returns to work. This arrangement is cumbersome at best and has no stability in that the visitation times change frequently due to Husband's fluctuating employment schedule. We

6

recommend that except for holidays and certain vacation periods, Husband's visitation rights be limited to weekend visits, but, as stated, he shall have liberal visitation rights so as to include a proportionate number of holidays and vacation times. We direct that the parties be given an opportunity to fashion a visitation schedule. In the event that they cannot, then it shall be left to the judgment of the trial court on remand to do so.

Wife further contends that the trial court erred in awarding child support payments to Wife equaling 15% of his net income, rather than 21% as provided by the guidelines. Having awarded the parties joint custody, but making Wife the primary physical custodian, the court stated: ". . . Ordinarily he would pay 21 percent. I'm going to put it 15 percent, whatever it is. . . because he's going to have a little extra time. He got a little more than usual."

In light of the fact that Wife now has full custody of the child, and thus more financial responsibilities, we are of the opinion that child support payments should be increased to 21% of Husband's net income.

Lastly, Wife contends that the trial court erred in awarding Husband $9,000.00 of the $35,000.00 considered as equity in the marital residence. Her claim of error rests on two grounds. First, because Husband removed $8,000.00 from their daughter's savings account when he moved out of the marital residence. Second, that the sum of $30,000.00, used for the down payment on the home, was a gift to her by William Adair, her employer (and then lover). In her brief, Wife states that "Brian Grant has been unjustly enriched by the Trial Court. It is reprehensible that he would ask for one/half of Wife's lover's gifts to her."

Husband on the other hand contends that $30,000.00 was part of Wife's bonus that was paid to her at a company Christmas party. Be that as it may, regardless of its source and the real motives behind it, when the $30,000.00 was used to pay part of the purchase price, and title to the property was taken in the names of both the parties', the funds were transmuted into marital property.

7

The trial court did not err in this division of the equity in the marital residence.

In their respective Conclusions, both Husband and Wife asked this court to award each of them attorney fees on appeal, to be established by the trial court upon remand. Considering the circumstances of this case in whole, we are of the opinion that each party should bear his or her attorney fees on appeal.

Accordingly, the trial court's judgment granting the parties joint custody with Wife being the primary custodial parent is reversed. Wife is awarded sole custody of the parties' minor child, with Husband to have liberal visitation rights. The trial court's judgment fixing child support is modified by increasing mother's support to 21% of Husband's net income. The trial court's judgment pertaining to the division of marital property is affirmed. The Tennessee Department of Human Services is ordered and directed to become involved in this case to the extent and in the manner set out heretofore in this opinion.

This case is remanded to the Circuit Court of Shelby County for further proceedings not inconsistent with this opinion. Costs in this cause on appeal are taxed 3/4 to Husband and 1/4 to Wife, for which execution may issue if necessary.

_____
TOMLIN, Sr. J.


_____
CRAWFORD, P. J. W. S.    (CONCURS)


_____
FARMER, J.                  (CONCURS)