# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

DEVONA L. MILLS, )
)
   Plaintiff/Appellant, ) Shelby Circuit No. 147635 R.D.
)
VS. ) Appeal No. 02A01-9711-CV-00295
)
IMMUAL MILLS, )
)
   Defendant/Appellee. )

FILED

November 18, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

### APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE
### THE HONORABLE JAMES E. SWEARENGEN, JUDGE

**RICHARD F. VAUGHN**
Memphis, Tennessee
Attorney for Appellant

**CHARLES W. McGHEE**
**CHRISTOPHER B. HAMILTON**
**MONROE, KAUFMAN & McGHEE**
Attorneys for Appellee

**REVERSED AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HERSCHEL P. FRANKS, J.**

   Devona Denson (Mother), formerly Devona Mills prior to remarriage, appeals the

trial court's modification of the custody of the parties' daughter, Andrea, from joint custody between Mother and Immual Mills (Father) to exclusive custody to Father with visitation to Mother. We find that the evidence preponderates against the trial court's award of Andrea's custody to Father and that the preponderance of the evidence supports an award of Andrea's custody to Mother based upon Andrea's welfare and best interests. As such, we reverse and remand this case to the trial court for further proceedings regarding child support and visitation.

## I. Factual and Procedural History

The parties in this case were divorced on March 15, 1995, on the grounds of irreconcilable differences. Pursuant to the parties' marital dissolution agreement and the trial court's order expressly adopting the terms of the agreement, Mother and Father were awarded "joint custody" of the parties' two minor children, Brandon (then 13 years old) and Andrea (then 6 years old). The ratified agreement recognized, however, that each parent would be the primary physical custodian of one of the two children (though it did not establish which parent would have primary physical custody of each child), and it set forth what it referred to as "reasonable and liberal visitation rights and privileges" for both parents "for the minor child not in their respective custodies." Essentially, each parent was entitled to both children on alternating weekends and holidays. Moreover, it is undisputed that the parties intended that primary physical custody of Brandon, who wanted to live with Father, lie with Father and that primary physical custody of Andrea lie with Mother. In fact, Father subsequently exercised primary physical custody of Brandon and Mother ultimately exercised primary physical custody of Andrea (though Father exercised primary physical custody of both children during the first three months immediately following the divorce so that both children could finish the current school year without interruption). Though each parent was granted primary physical custody of one of the children, the approved marital dissolution agreement granted both parents rights in decision making regarding both

2

children's care, education, health, and other matters of general welfare.[1]

On June 26, 1996, Father filed a petition seeking modification of custody, which alleged that there had been a substantial and material change of circumstances regarding Andrea's custody and that, based upon Andrea's best interests, her custody should be awarded to Father with reasonable and liberal visitation awarded to Mother. Father also sought either a modification or clarification of Brandon's custody such that Father would be "considered the primary custodial parent for both minor children." On August 16, 1996, Mother filed a counter-petition seeking modification of custody, which, like Father's petition, alleged that there had been a substantial and material change of circumstances warranting a change in Andrea's custody arrangement. Contrary to Father's petition, however, Mother's counter-petition alleged that, based upon Andrea's best interests, her custody should be awarded to Mother with visitation awarded to Father. Mother did not contest Father's contention that Father should be the primary custodial parent of Brandon.

On September 30, 1996, upon a motion filed by Mother pursuant to Tennessee Rule of Civil Procedure 35.01, the trial court ordered that Father, Mother, Step-father, Brandon, and Andrea all submit to psychiatric and/or psychological mental examinations. Subsequently, these persons were evaluated by Dr. J. Ivey Bright, whose evaluation summaries were disclosed to the parties.

On June 27, 1997, the trial court heard this matter. At the time of the hearing, Brandon was 15 years old and Andrea was 8 years old. It was undisputed that Mother no longer had a close relationship with Brandon, even though Mother desires to have a better relationship. Father described the relationship between Mother and Brandon as "horrible." One of the children's grandparents described Brandon's attitude toward Mother as "terrible." In addition to whatever other reasons may have led to the deterioration of the

---

1. While the rights granted to both parents regarding the care, education, health, and other matters of general welfare of both children are primarily those same rights enumerated by Tennessee Code Annotated section 36-1-101(a)(3) for any non-custodial parent, the approved marital dissolution agreement contained the additional right and duty whereby each parent was required to "*consult* with each other in regard to . . . all decisions to be made concerning" such matters. As noted in Dalton v. Dalton, 858 S.W.2d 324 (Tenn. App. 1993), *consultation* in parental decision-making in the context of what is termed *joint* custody implies joint decision-making. 858 S.W.2d at 326.

relationship between Mother and Brandon, Father admitted that he has told Brandon that the divorce and family break-up was caused by Mother and Lowell Denson.

Father asserted that he wanted both children to grow up as brother and sister and that they should be raised together. Though Father characterized Brandon's and Andrea's relationship with each other as typical and healthy, where they have their play time and their arguments, he also stated that there is an existing separation in the children's relationship. In fact, both Mother and one of the children's grandparents testified that Brandon and Andrea are not close to one another, and the grandparent further stated that the children do not get along very well.

Subsequent to Mother's and Father's divorce, Mother married Lowell Denson (Step-father). Mother, Step-father, and Andrea resided together for over two years and lived in a large four-bedroom house. Though Mother had been employed prior to these three living together, she stopped working in order to spend more time with Andrea. Mother was able to stop working and spend this extra time with Andrea because Step-father was able and willing to support both Mother and Andrea. Mother characterized her relationship with Andrea as "great," explaining that, among other things, she would spend afternoons with Andrea doing homework with her. During the 1996-97 school year, Andrea's school grades were quite high, being almost straight A's. According to Mother and one of the children's grandparents, Andrea seemed happy and well adjusted living with Mother and Step-father.

Also, subsequent to Mother's and Father's divorce, Father and Brandon resided together. Father's house is a three bedroom house where each child can have his or her own room. Father is employed full-time as an engineering technician. During the 1996-97 school year, Brandon's school grades were quite low.

Father considers himself to be a good parent, which Mother does not contest. Mother, however, considers herself to be the more appropriate parent to have custody of Andrea.

4

After hearing both parties' proof, the trial court ordered that custody of Andrea be changed to Father. Though the trial court's order did *not* modify Brandon's custody by granting exclusive legal custody to either parent, the relief that Father's petition alternatively sought regarding Brandon was granted. In other words, the trial court's order, which referenced and adopted its oral ruling, "clarified" Brandon's existing custody by recognizing that Father was and is the primary physical custodian of Brandon (it placed *both* children with Father by simply modifying Andrea's custody). In the trial court's final order, which expressly adopted the court's oral ruling from the hearing, it set forth the reasoning for its custody determination as follows:

> There is a basic premise that children ought to be together . . . . Based on the proof that I have heard here today it would be difficult, if not impossible, for the son and the daughter to live in the mother's house. They can live together with their father . . . . I am going to grant the petition and award custody [of Andrea] to the father . . . .

On appeal, we are faced with the following issues:

> 1. Whether there was a material change in circumstances sufficient to justify a change in custody?
>
> 2. If a material change in circumstances warranted a change in custody, whether the preponderance of the evidence supports the trial court's award of Andrea's custody to Father?
>
> 3. Whether the trial court erred in failing to consider the psychological evaluations by Dr. Bright and Andrea's preference as to custody?
>
> 4. Whether Father is entitled to recover attorney fees on appeal pursuant to Tennessee Code Annotated section 36-5-103(c)?

## II. "Changed Circumstances"

Our review of the trial court's factual findings in this custody case is *de novo* upon the record, with a presumption of correctness. Tenn. R. App. P. 13(d); Hass v. Knighton, 676 S.W.2d 554, 555 (Tenn. 1984). Pursuant to Tennessee Code Annotated section 36-6-101, custody determinations stemming from suits for annulment, divorce or separate maintenance "shall remain within the control of the court and be subject to such changes or modifications as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a)(1) (Supp. 1998). The "exigencies" of the case may require a change or modification in custody based upon any material change of circumstances affecting the welfare of the

child, including new facts or changed conditions since the prior decree which could not be anticipated by the decree. Dalton v. Dalton, 858 S.W.2d 324, 326 (Tenn. App. 1993); Dailey v. Dailey, 635 S.W.2d 391, 393 (Tenn. App. 1981).

> The unworkability of joint custody because of the recalcitrance of one or both parents is not a change of circumstances anticipated in the former decree. Such is therefore a proper ground for re-evaluating the custody arrangements in the former decree. *Dodd v. Dodd*, Tenn. App.1987, 737 S.W.2d 286.

Dalton, 858 S.W.2d at 326. Further, the burden of proof for establishing a "material change in circumstances" is by a preponderance of the evidence. Tenn. Code Ann. § 36-6-101(a)(2).

In the case *sub judice*, it is apparent from the record that the parents have become either unable or unwilling to communicate and cooperate in parental decision-making and other matters affecting the welfare of Andrea. Father admits that he has a temper such that he will raise his voice and say "ugly" things to Mother on the telephone. Therefore, Mother attempted to have Father communicate through Step-father. Father, however, refuses to speak with Step-father for any reason and has expressed that he will never speak with Step-father. In fact, on one occasion, Father contacted the Denson residence to speak with Andrea, but because Step-father answered and insisted on speaking with Father before putting Andrea on the phone, Father simply hung up. Father further admitted that if Step-father ever phoned him, he would not even take the call to find out if it was an emergency. Based on the breakdown in communication, Mother has resorted to written communication by letters. The record before this Court demonstrates that Father is generally unwilling to respond or cooperate in regard to communications about visitation and other matters affecting the welfare of Andrea. Accordingly, we find that the preponderance of the evidence establishes a material change of circumstances sufficient to warrant a modification of custody from joint custody to exclusive custody to one parent with visitation to the noncustodial parent.

### III. The Trial Court's Modification of Custody

Having determined that changed circumstances warranted a modification in custody, we next turn our attention to the propriety of the trial court's award of Andrea's custody to Father. As we noted above, the record reveals that the trial court's decision to place Andrea's custody with father was based upon the "basic premise that children ought to be together." While it is true that this Court has recognized that, as a *general* rule, "it is not good to separate two small children," the facts of a particular case may require that children be separated based upon their welfare and best interests. Terry v. Terry, 361 S.W.2d 500, 504 (Tenn. App. 1960). See also Dodd v. Dodd 737 S.W.2d 286 (Tenn. App. 1987). In this case, we are not dealing with "two small children," but are, instead, dealing with two children who are seven years apart in age, the older of which was fifteen years old at the time of the trial court's hearing. Additionally, we note that the two children are not the same gender. Most importantly, however, the children have already lived apart for over two years pursuant to the parents' previous agreed custodial arrangement. In fact, testimony was introduced establishing that the children are not close to one another.

There has been no substantial proof introduced to indicate that either Mother or Father should be considered an unfit or unsuitable parent so as to deny either one of them custody of Andrea. However, we find that the evidence preponderates against the trial court's award of Andrea's custody to Father. Instead, the preponderance of the evidence supports an award of Andrea's custody to Mother based upon Andrea's welfare and best interests. In addition to other evidence supporting our determination, we note that Mother no longer works in order to spend additional time with Andrea, while the two are still well supported by Step-father. The record as a whole indicates that Andrea has been happy and well adjusted living with Mother and Step-father and that her relationship with Mother is favorable. The record as a whole further indicates that Andrea's relationship with both of her natural parents, taken together, will be better served by awarding custody to Mother.[2] In most cases, and in this case, promoting a child's relationship with *both* natural parents is in the child's best interests.

---

2. By way of example, during the time Mother previously exercised primary physical custody, Mother provided Father with more visitation than was required under the approved marital dissolution agreement. The record indicates that awarding custody to Mother will likely be less detrimental to the Father-daughter relationship than an award of custody to Father would be to the Mother-daughter relationship.

## IV.  The Psychological Evaluations and Andrea's Preference as to Custody

The next issue presented to this Court is based upon Mother's assertion that the trial court erred by not considering the psychological evaluations by Dr. Bright and by not considering Andrea's preference as to custody.  Though we find resolution of these issues to be unnecessary because of our reversal of the trial court's award of Andrea's custody to Father, we note that Father's brief correctly observed the following:

> The record is clear that at no time prior to, during, or even after the trial, did the Mother attempt to introduce the psychological reports, or the testimony of the psychologist.  Furthermore, the psychological evaluations were never mentioned at any time during the trial.

On appeal, "a party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error."  Tenn. R. App. P. 36(a) advisory comm'n cmt.  Though the opinions of Dr. Bright might have been offered through testimony or by stipulation between the parties, *no* steps were taken to introduce Dr. Bright's opinions.  Similarly, Mother's brief has not referred us to any point in the record that would indicate that Mother took any steps to offer evidence of Andrea's preference as to custody.  In fact, the only point in the record to which Mother refers us is where Father's counsel asked Father to relay what Andrea expressed to him regarding where she would like to live, which was objected to by Mother's counsel.

## V.  Attorney Fees on Appeal

The last issue presented to this Court is based upon Father's assertion that he is entitled to recover attorney fees on appeal pursuant to Tennessee Code Annotated section 36-5-103(c).  This statute establishes, "the spouse . . . to whom the custody of the child . . . is awarded may recover from the other spouse reasonable attorney fees incurred . . . in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child . . . of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court . . . in the discretion of the court."  Tenn. Code Ann. § 36-5-103(c) (Supp. 1998).  The statute's reference to

8

"subsequent" hearings includes appellate hearings before this Court where the trial court's judgment is defended. <u>Dalton v. Dalton</u>, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993). However, based upon the foregoing, we deny Father's application for attorney fees on appeal.

## VI.  Conclusion

Accordingly, the trial court's award of Andrea's custody to Father is hereby reversed and Mother is hereby awarded exclusive custody of Andrea.  We further remand this case to the trial court for redetermination of child support and visitation.  Until such time as the trial court orders otherwise, however, the terms set forth in the parties' marital dissolution agreement regarding child support and visitation are hereby reinstated.  Costs of this appeal are taxed to Father, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FRANKS, J.

9