IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2002 Session

## SUSAN FORD (PURVIS) TURNER v. JEFFREY THOMAS PURVIS

### Appeal from the Chancery Court for Montgomery County
No. 95-09-0046    Michael R. Jones, Chancellor

### No. M2002-00023-COA-R3-CV - Filed April 9, 2003

Mother appeals from a trial court modification of the custody and visitation arrangement which had been in place since the divorce in 1997. The previous arrangement gave Mother primary residential custody, and Father was to have liberal visitation as agreed upon by the parties. After declining to adopt the parenting plan submitted by either Mother or Father, the trial court devised a plan establishing a specific residential schedule. Mother argues that there was not a material change of circumstances that warranted the trial court's decision. Because we determine that a material change in circumstances occurred and because the modification of the custody arrangement was in the best interests of the children, we affirm the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and ALLEN W. WALLACE, SP. J., joined.

Roger A. Maness, Clarksville, Tennessee, for the appellant, Susan Ford (Purvis) Turner.

Mark R. Olson, Clarksville, Tennessee, for the appellee, Jeffrey Thomas Purvis.

### OPINION

I.

Susan Ford Turner ("Mother") and Jeffrey Thomas Purvis ("Father") were divorced by Final Decree on June 13, 1997. Two minor children, T.P. and C.P., both boys, were born during the marriage, in 1988 and 1990, respectively. The parties filed a Marital Dissolution Agreement ("MDA") that was incorporated into the final decree of divorce. According to the MDA, the parties were to have joint custody of the two minor children. Mother would act as the primary residential parent and would undertake primary responsibility for decisions regarding the education, religious training, non-emergency health care, and discipline of the children. Father was to have reasonable

and liberal visitation with the children, and he agreed to provide some advance notice when he desired to exercise that visitation.

Mother has lived at the same residence with the minor children for thirteen years. Mother and Father live approximately five (5) minutes away from each other by car. Mother remarried in early 2000 to Jeff Turner. Father is engaged to Margo Turner (Jeff Turner's ex-wife). Margo and Jeff Turner's three children are at Father's house on a regular basis. Father is a race car driver and travels extensively as a result of his job, frequently being out of town from Wednesday or Thursday through Saturday or Sunday and traveling approximately 32 weeks out of the year.

On May 23, 2001, Father filed a petition for a modification of the custody arrangement. Father argued that since the entry of the divorce decree, difficulties had arisen with regards to visitation, namely that the parties were unable to agree about the requirement of advance notice prior to visitation. Father asserted that his career as a race car driver prohibited him from complying with the extensive pre-planning required by Mother as a prerequisite to visitation with the children and that as a result of: (1) Mother's actions; (2) the increasing age of the children; (3) the children's need for the influence of their Father; and (4) Mother's use of the children as a medium of communication, a material change of circumstances had occurred so as to justify a modification of the visitation arrangements.

On December 3, 2001, both Mother and Father filed Proposed Parenting Plans. The trial court heard the matter on that date and declined to adopt either party's parenting plan. The court issued an oral ruling from the bench, and entered a slightly modified written order the next day. On December 20, 2001, the trial court entered a final order incorporating its previous orders and detailing the new visitation schedule, as follows:

> The Court does not adopt the parenting plan submitted by either party. The Court finds it appropriate that the Court fashion a specific visitation schedule for the children, which is set forth as follows: . . .
>
> Each Monday at 3:00 p.m., or the close of school, whichever is sooner, the Father shall pick the children [up] at school and keep them with him until Thursday morning at 9:00 a.m., or whenever school begins. The father shall return the children to the school. During the summer vacation, the same schedule is to be observed, however, the children are to be returned to the Mother at the end of the Father's visitation schedule and shall be delivered by the Mother to the Father at the beginning of the scheduled visitation.
>
> During each month of December commencing with December 2002, and each month of December thereafter, the children shall reside with the Father for the entire month of December except for the first and third weekend of the month of December, and Christmas Eve and Christmas Day. The Mother shall receive the children on the first

and third Friday at 5:00 p.m., and shall return the children to the Father on the first and third Sunday at 5:00 p.m.

During the NASCAR race season, the children shall be with the Father for two race weekends per season. The Father shall select those weekends by giving the Mother 10 days notice of the weekends selected.

During the summer, each parent shall have the children for two uninterrupted weeks.

No provision is made for other holidays, the parties shall simply have the children with them during that time period which is set forth herein.

Should either party desire to take the children more than 100 miles from their home during the time that they are going to be with that parent, that parent shall provide 48 hours notice to the other parent of the intent to take the children more than 100 miles from home, and shall provide an itinerary as to where the children shall be residing and a telephone number at which the children can be reached. . . .

Essentially, the trial court replaced the loosely-defined "liberal and reasonable visitation to be agreed upon by the parties" upon unspecified advance notice previously granted father with a specific visitation or residential schedule. The Father sought modification in this case shortly after the effective date of the new parenting plan legislation, *see* Tenn. Code Ann. § 36-6-401 et seq., and there is no dispute that the plan applies herein. Each party submitted proposed parenting plans to the trial court. Any decree of modification "shall incorporate a permanent parenting plan." Tenn. Code Ann. § 36-4-404(a).[1] Tenn. Code Ann. § 36-6-404(b) requires that a parenting plan include a residential schedule, which designates in which parent's home the child will reside on given days during the year. A residential schedule is defined as:

> . . . the schedule of when the child is in each parent's physical care, and it shall designate the primary residential parent [the parent with whom the child resides more than 50% of the time]; in addition, the residential schedule shall designate in which parent's home each minor child shall reside on given days of the year, including provisions for holidays, birthdays of family members, vacations, and other special occasions, consistent with the criteria of this part; provided, that nothing contained herein shall be construed to modify any provision of § 36-6-108; . . . .

Tenn. Code Ann. § 36-6-402(5).

---

[1]The requirement of a permanent parenting plan does not apply to "parties who were divorced prior to July 1, 1997, and thereafter return to court to enter an agreed order modifying terms of the previous court order." Tenn. Code Ann. § 36-6-404(a). The parties herein did not return to court to enter an agreed order, and, therefore, the new parenting plan legislation is applicable in the case herein.

Mother appeals. Although she acknowledges that both parents came before the court seeking a specific visitation schedule, she argues that the modification made by the court totally changed the circumstances of the children and deprived her of her role as primary custodial parent although she had performed that role well.

II.

Once a valid order of custody has been issued, a court may modify that custody arrangement when both a material change in circumstances has occurred and a change of custody is in the child's best interests. *Kendrick v. Showmake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Blair v. Badenhope*, 77 S.W.3d 137, 148 (Tenn. 2002). "While there are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," *Blair*, 77 S.W.3d at 150, a material change of circumstance does not require a showing of a substantial risk of harm to the child. *Kendrick*, 90 S.W.3d at 570 n.5 (citing Tenn. Code Ann. § 36-6-101(a)(2)). To justify modification, the change must have occurred after entry of the order sought to be modified, and must be one that was not known or reasonably anticipated when the original order was entered, and must affect the child's well-being in a meaningful way. *Kendrick*, 90 S.W.3d at 570; *Blair*, 77 S.W. at 150.

Although *Kendrick* speaks in terms of an actual change in custody, its principles apply to changes in a custodial and visitation arrangement, including arrangements that are now established in a permanent parenting plan designating decision making authority and a specific residential schedule. Under the plan adopted by the court herein, Mother remains the primary residential parent. When faced with a request to establish a specific visitation schedule, the court properly applied the requirements of the parenting plan legislation. We will apply the material change of circumstances and best interests standard.

While the trial court's conclusions of law are reviewed under a pure *de novo* standard, with no deference accorded, we review the findings of fact by a trial court *de novo* with a presumption of correctness for the trial court's decision, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W.3d at 569-70; *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). Where the trial court makes no specific findings of fact, we must review the record to determine where the preponderance of evidence lies. *Kendrick*, 90 S.W.3d at 570; *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

The determinations of whether a material change or circumstances has occurred and where the best interests of the children lie are factual questions, absent a failure to use proper legal standards. Trial courts must exercise broad discretion in child custody matters. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). Because of the discretion given trial courts in this area and because of the fact specific nature of such decisions, appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation. *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001); *Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997) (quoting *Gaskill v. Gaskill*, 936 S.W.2d 626, 631(Tenn. Ct. App. 1996)). Accordingly, this court will decline to disturb the parenting plan fashioned by the trial court herein unless that decision is

based on a material error of law or the evidence preponderates against it. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Similarly, a trial court's determination on issues of visitation should be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

III.

Evidence that an existing custody and visitation arrangement is not working is sufficient to support a finding of material change of circumstances. *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 315-16 (Tenn. Ct. App. 2001); *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1998). While the parties herein agreed to joint custody and to the original custody and visitation arrangement, it is not surprising that the ill-defined liberal visitation provision, dependent upon agreement of the parties and non-specific advance notice requirements, led to problems.[2]

The parents had difficulty communicating with each other; Father asserts he was denied visitation because the timing of his requests did not suit Mother's rigid approach to scheduling; he asserts that his career as a race car driver prohibited him from complying with the extensive pre-planning required by Mother as a prerequisite to visitation with the children. Mother asserts that she tried unsuccessfully to work out a visitation schedule with Father and that Father would often call only minutes before the children left for school to let Mother know that he wanted to have visitation with them that afternoon. Father was not allowed some requested visits, including a request to take the children to watch him in a particular race. Specific incidents were testified about, and Father believes Mother wants to limit his interaction with the children and has failed to provide him with information about their activities. Mother admitted withholding some important information about one son for a month.

The trial court found that "the joint custody arrangement entered by the Court in 1997 without a specific visitation schedule was destined to fail" and that it was appropriate that the custody arrangement be set forth in specific fashion.[3] At the trial herein, both parties testified they wanted a set visitation schedule; both testified that the current situation was not working. Thus, we find the evidence does not preponderate against the trial court's implicit finding of a material change of circumstances.

Although Mother argues that the exigencies of the situation did not require or justify the modification made by the court, or, stated another way, that there was no showing of a change of circumstances materially affecting the children, her real argument is that the modification ordered by the court went beyond that necessary to remedy the problem of undefined visitation. Mother

[2] Those problems appear to have emerged as a result of, or been exacerbated by, the unusual extended family relationships and the various animosities inherent therein.

[3] The trial court also noted that the parties had submitted proposed visitation schedules to the judge who had granted the divorce, but that judge had died before he ruled on those proposals.

asserts the plan developed by the court places the children with Father approximately 175 nights per year. She particularly objects to the Father having residential custody 3 out of 5 school nights. She testified about her concerns that they have structure on school nights, get their homework done, and arrive at school on time and her reservations about Father's ability or willingness to provide this structure. Thus, Mother's real argument is that the parenting plan and residential schedule designed by the court is not in the children's best interests.

Mother offered a proposed parenting plan that would have given Father custody or residential placement every other weekend, with alternating weeks in the summer. Father proposed every other week placement throughout the year. Father's occupation as a NASCAR driver requires him to be absent from his home Thursday through Saturday or Sunday to participate in testing and racing. He races in 32 to 41 races per year. Mother acknowledged that Father's career does not make it easy for traditionally scheduled visitation to take place.

When fashioning the residential schedule, the court is instructed to take into account the factors listed in Tenn. Code Ann. § 36-6-404(b), which states:

> . . . the court shall make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child. The child's residential schedule shall be consistent with this part. . . . [T]he court shall consider the following factors:
>
> (1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society which the child faces as an adult;
> (2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;
> (3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;
> (4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;
> (5) The disposition of each parent to provide the child with food, clothing, medical care, education, and other necessary care;
> (6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
> (7) The love, affection, and emotional ties existing between each parent and the child;
> (8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14) The reasonable preference of the child if twelve (12) years of age or older. . . .

(15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(16) Any other factors deemed relevant by the court.

These factors incorporate those set out in Tenn. Code Ann. § 36-6-106 (the statute which previously guided the trial court in custody determinations) as well as factors established by the courts. The primary concern in determinations of a child's residential placement remains the best interests of the child, and consideration of the factors under Tenn. Code Ann. § 36-6-404(b) still necessitates a comparative analysis.

Thus, by statute as well as case law, the welfare and best interests of the children are the paramount concern in custody, parenting and residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs. *Parker*, 986 S.W.2d at 562 (Tenn. 1999). This determination is factually driven and requires the court to carefully weigh many considerations. *Gaskill*, 936 S.W.2d at 630.

In the case herein, the trial court heard extensive testimony from Mother and Father regarding their parenting styles, their relationships with the children, the existing custody arrangement, and their preferences as to any modification of that arrangement. According to that testimony, we have ascertained that Mother and Father live approximately five minutes away from each other. Both children perform relatively well in school and will attend the same school whether they live with Mother or Father. About a year ago, the older child expressed reluctance in visiting with Father. According to Father, this reluctance was the result of derogatory comments made about Father by Mother; according to Mother it was because that child was unable to spend time alone with his Father since Father's future wife and her children were usually around.[4] The younger child, on the other hand, has a good relationship with his Father. Both parents are able to provide financial stability for the children and both parents have adequate homes; in fact, both Mother and Father are

---

[4]It is apparent from the record that the older child has experienced some difficulties, apparently resulting from the changes in the family situations and interactions. The trial court ordered counseling for the children to include the parents if recommended.

more than capable of providing the children with many advantages. In reviewing the transcript of the hearing, it is also apparent that both Mother and Father love these children and are concerned not only for their stability and safety, but for other important matters such as their health, education, and happiness.

Although the trial court did not make specific findings of fact, from our review of the record, we cannot find that the evidence preponderates against the trial court's determination that the children's best interests were served by the parenting plan it adopted.

For the foregoing reasons, we affirm the decision of the trial court. Costs of the appeal are taxed to the appellant, Susan Ford (Purvis) Turner.

_____
PATRICIA J. COTTRELL, JUDGE