# FILED

November 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## IN THE COURT OF APPEALS AT NASHVILLE

GINGER ASHLEY FERRELL, )    C/A No. M1998-00214-COA-R3-CV
                       )    DAVIDSON COUNTY
        Respondent/Appellee,    )    Circuit No:
                       )    92D-1927
                       )
    v.    )
            )
                       )
FRANKIE DEWAYNE FERRELL,                )
                                        )
    Petitioner/Appellant.    )
                       )
                       )


APPEALED FROM THE SECOND CIRCUIT COURT OF DAVIDSON COUNTY

THE HONORABLE MARIETTA M. SHIPLEY, JUDGE


No Brief Filed By Respondent/Appellee

Connie Reguli
353 Wimpole Drive
Nashville, TN 37211

    Attorney for Petitioner/Appellant


                    REVERSED AND REMANDED


            **Houston M. Goddard, Presiding Judge**


CONCUR:

FRANKS, J.
CAIN, J.

<u>O P I N I O N</u>

This case concerns issues presented by the Father/Appellant, Frankie Dewayne Ferrell, in his petition to change custody of his two minor children from the Mother/Appellee, Ginger Ashley Ferrell. We note that although the Mother was represented by counsel at trial, she did not file a brief on appeal.

Although the Father enumerates several issues in his brief, all of them pertain to the overarching issue of whether the Trial Court erred in allowing the Mother to retain custody of the two children. He also raises a collateral issue of attorney's fees for the "prevailing" party under Tennessee Code Annotated § 36-5-103(c) in a change of custody case.

We reverse the judgment of the Trial Court and award sole custody of both minor children to the Father and remand to the Trial Court for imposition of a supervised visitation plan for both children with the Mother.

The parties were divorced on October 14, 1992. Two children were born of the marriage, Mandy and Joey, who were ages eight and fifteen, respectively, at the time of the change of custody hearing. The Marital Dissolution Agreement awarded the Mother sole custody and control of both children at the time of the divorce.

On April 21, 1998, the Father filed a petition for change of custody, alleging a material change in circumstances

had occurred since the entry of the final decree.  The change was that both children had come to live with him since the divorce decree was entered, the Mother had sought only limited visitation with both children since they had lived with the Father, and the Mother had failed to provide child support for both children.[1]

During the change of custody hearing, the Father testified that he was seeking a change of custody also for medical reasons.  He explained that Mandy became ill while living with him, and the Mother "had full custody of both kids, from a legal standpoint, and she was the only one that could, basically, take them to the doctor, or if any kind of emergency came up, she was the only one that had legal custody to do that."

Since May 1994, Mandy has resided with the Father because of an alleged incident of sexual abuse by an adult male friend of the Mother.  Joey Farrell has resided with his Father since January 1996.  The Father testified that he brought Joey to his home in January 1996 after he had been contacted by Wright Middle School and informed that Joey was not attending school.  The decision for Joey to live with the Father was a mutual one between the Father and the Mother.

On June 22, 1998 an order was entered suspending the

Mother's visitation with her daughter Mandy based upon a letter to the Court by the counselor. In this same order, the Judge appointed a guardian ad litem, asked him to visit the homes of both the Mother and the Father, and report his findings at the hearing on July 28, 1998.

The Father has been remarried for five years, and his wife's three children live in the home with his wife and him. He has been employed in the same job for fifteen years.

The Father admitted to having a confrontation with Joey over an incident involving drugs and told the Court that his entire family was in counseling. The Father has had Joey submit to drug screenings in an attempt to stop his abuse of drugs. The Father expressed his belief that Joey would only conform to rules long enough to get what he wanted.

The Father acknowledged that he was disturbed by the Mother's behavior. He testified that Joey had smoked marijuana and that Joey told him that he had gotten the marijuana from his Mother. Some of the Father's other complaints about the Mother were that she had lived at numerous locations and had been evicted several times; she currently did not have her own place to live, but instead lived with her brother-in-law; she worked nights and thus, could not properly supervise Joey; she did not have health

insurance and did not have a car; and she had lived with her husband, who had an inconsistent work history, for several years and had gotten married just before the hearing on the petition to change custody.

Moreover, the Father felt that the sexual abuse of Mandy was the result of the Mother's negligence and that Joey's poor attendance record at school was due to her failure to supervise Joey.

The Father also complained that before the hearing on the petition for change of custody and without notifying him, the Mother picked Joey up and took him to her home. She apparently refused to allow Joey to visit with the Father, so the Father filed a motion to set a visitation schedule. According to the Father, Joey exhibited behavioral changes during his stay with his Mother: he burned a gang symbol into his skin; he had been with someone who stole a car; and he changed his appearance by wearing baggy pants and by shaving his eyebrows and his head.

The Mother testified that she had intended to get her name on the lease of the apartment she lived in, while admitting that she had lived at as many as nine different addresses in six years and had been sued for eviction three

times.  In response to the Father's concern that she did not have a car, she stated that she had purchased a car.  She admitted that she got married just before her appearance in Court for the change of custody hearing and that her husband had an inconsistent work history.

The Mother further admitted to a thirteen-year history of using marijuana.  She also admitted that when Joey and Mandy were younger she left them home alone with a man she had known only a couple of weeks and that Mandy was sexually abused by the man.

Mother testified that if Joey smoked cigarettes in her home, she was not there when it happened.  She stated that she did not smoke marijuana in front of Joey, but did admit that he may have walked by the room she was in while she was smoking it.  She further stated that if Joey used marijuana at her home, she would drug test him frequently and would get him counseling.  However, she admitted that she had never taken Joey for a drug test or for counseling.

Witnesses other than the parties testified as follows:

LISA BARNEY

She is a friend of Joey's.  She was frequently in the home of the Mother and that she had seen the Mother smoke marijuana about every weekend and that Joey was present during this time.  She had seen Joey smoke cigarettes in front of the Mother.   The Mother had allowed her to spend the night at her home while Joey was there and that she and Joey had sexual relations in the Mother's home.

### JOHNNY MYERS, BY DEPOSITION

Johnny Myers, the husband of the Mother, was unemployed at the time of his deposition on June 4, 1998.  He acknowledged that he had earned $5,842 in 1995, $13,655 in 1996, and $1,738 in 1997.  He did not have a driver's license and had not had a valid driver's license for over two years.

He and the Mother had lived together for approximately four years and did not get married until she was scheduled to appear in court on the petition to change custody.  He had seen the Mother smoke marijuana on more than one occasion in their home and within the last year, stating that she would smoke about once a month.  He acknowledged that he had seen Joey smoke cigarettes and that the Mother had caught Joey smoking cigarettes.

He and the Mother had lived with his brother, Thomas

Myers, for about a year.  He identified eight addresses at which the Mother had resided during the last five years.  When Joey was at the residence, he slept in the family room.  Furthermore, he believed Joey was able to supervise himself and thus, could be left alone in the evening.

THOMAS MYERS, BY DEPOSITION

The Mother had resided with Thomas Myers for approximately one year at the time of the trial.  His daughter, Erin, had also lived in the home, and she attended only thirty days of school the previous year.  Her boyfriend, Devon, had been suspended from school under the zero tolerance program for having marijuana and a knife in his car at school.  Devon had spent the night in the home with Erin.  Thomas Myers had seen the Mother smoke marijuana in the home more than once, and Johnny Myers had also smoked marijuana.  He had seen Joey smoke cigarettes in the home.

The Trial Court entered a Memorandum Opinion and Parenting Plan on August 3, 1998.  The Court noted that the guardian ad litem recommended that Joey live with his Mother during the week and his Father on the weekends because that is a time "when he is most prone to get into trouble."  The Court set out a list of guidelines in the parenting plan, which included maintaining a minimum grade point average of 80; participating in court-ordered drug screenings; attending school everyday; showing respect to his teachers, parents, and

stepparents; observing a curfew; refraining from smoking cigarettes; and not altering his body with tattoos or body piercing.  If the guidelines were not met, the Court stated that the Father could file a Motion for an Immediate Change of Residential Provisions.

An order was also entered on August 3, 1998 ordering Joey and his Mother to submit to drug screenings at the General Sessions Probation office.

On August 13, 1998, the Father filed a Motion to Alter or Amend the Judgment.  Some of his allegations were that the Court had punished him by setting the same guidelines on the child as he had set and then placing the child with the Mother and that the Father had been the primary caregiver. The Father further asked the Court to make the Mother provide proof that she had changed her employment schedule and had added her name on the lease of the apartment in which she resided.  The Father asked that, in the alternative, the Court to make an immediate change of custody if any infractions occurred in the guidelines.

On September 25, 1998, the Father filed a Motion for Immediate Change of Custody because the Mother failed to appear for her drug screenings, and on October 2, 1998, the Father filed a Motion for Immediate Change of Custody because

Joey had violated his curfew.  On October 7, 1998, the Court entered an Order on the Motion to Alter or Amend the Judgment, which left the Parenting Plan in place and ordered Joey to follow the guidelines imposed by the Trial Court.

On October 13, 1998, the Father filed a supplement to his Motion for Immediate Change of Custody.  The Mother had missed another drug screening and had failed to provide the Court with a copy of Joey's report card.  On October 19, 1998, the Court filed the notices from the General Sessions Probation office that the Mother had failed to appear for drug screenings on two previous occasions, and on that same date, the Court filed the results of a drug screening the Mother had been asked to take the day she appeared in Court on the Motion for Immediate Change of Custody.  The results from that drug screening showed that she was under the influence of cocaine.

The Father filed a Notice of Appeal on October 30, 1998.

The basis of the Father's appeal is that the Trial Court erred in allowing the Mother to retain custody of both children.  Specifically, the Father contends that the Trial Court erred in not considering the Mother's voluntary relinquishment of custody and in entering an order reflecting the change of custody that the parties had already implemented

and that the Court erred in not making an immediate change of custody when the Mother failed to appear for drug screens as ordered by the Court instead of the Father filing a motion.

In a custody case, our review is <u>de novo</u> upon the record accompanied by a presumption of correctness under Rule 13(d) of the Tennessee Rules of Appellate Procedure. We must affirm, unless the preponderance of evidence is otherwise. <u>Hass v. Knighton</u>, 676 S.W.2d 554, 555 (Tenn. 1984). The noncustodial parent carries the burden to prove changed circumstances. <u>Musselman v. Acuff</u>, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). Tennessee Code Annotated § 36-6-101(a)(1) provides that the decree for custody "shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require."

There is no definitive rule as to what constitutes changed circumstances. <u>Dantzler v. Dantzler</u>, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). "'Changed circumstances' includes any material change of circumstances affecting the welfare of the child or children including new facts or changed conditions which could not be anticipated by the former decree." <u>Dalton v. Dalton</u>, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993) (citation omitted). A party's failure to comply with a Trial Court order regarding prohibited use of alcohol and drugs may

result in a change of custody. <u>Hooke v. Thompson</u>, an unreported opinion of this Court, filed in Nashville on October 4, 1995.

The Father has been employed for the last fifteen years and has been remarried for the last five years. The record shows that the Father has had custody of his two children for a number of years with the consent of the Mother. The friction between the Father and Joey appears to surface when the Father attempts to correct Joey's errant behavior with respect to his abuse of drugs. One has only to look at the procedural history of this case to see the efforts of the Father to control his son's behavior. The Father has also sought counseling for his entire family and has even required his son to undergo drug screenings in an attempt to correct his son's behavior.

The Mother, on the other hand, admits to having smoked marijuana over a thirteen-year period, and according to the testimony of several witnesses during the hearing, has smoked it in the presence of Joey. The Mother, furthermore, has had an erratic living arrangement, having lived at numerous addresses over a six-year period of time. In fact, the apartment in which she currently resides is leased to her husband's brother, Thomas Myers. Furthermore, the record shows that Joey, while living with his Mother, did not have a bedroom in which to sleep, but slept instead in the family

room.  The record further shows that Joey has been allowed to smoke cigarettes while staying with his Mother.  There was also testimony that Joey was allowed to spend the night with female teenager while at the Mother's residence, and that the two teenagers had engaged in sexual relations at the Mother's residence.  In addition, the Mother's residence is frequented by other teenagers who would provide a bad influence on Joey.

Finally, we are most troubled by the Mother's continued drug abuse.  We note that the Mother and Joey both have failed to appear for court-ordered drug screenings, and on one occasion when the Mother was tested, the test showed she was under the influence of cocaine.

We believe that there has been a sufficient change in circumstances established by a preponderance of the evidence to warrant a change in the custody arrangements.  The Father can provide a stable home environment for both Mandy and Joey, and the record reveals that the Father has never attempted to keep the children from visiting with the Mother.

Under Tennessee Code Annotated § 36-5-103(c), the prevailing party in an action for a change of custody may receive attorney's fees.  In light of our decision to award custody of both children to the Father, the Father is awarded his attorney's fees.

Based on the foregoing, we reverse the judgment of the Trial Court and award sole custody of both children to the Father and remand to the Trial Court for imposition of a supervised visitation plan for both children with the Mother. The Father is awarded his attorney's fees, the amount of which will be determined by the Trial Court upon remand. The case is accordingly remanded to the Trial Court for imposition of a supervised visitation plan, awarding of attorney's fees and collection of costs below, which are, as are costs of appeal, adjudged against the Mother.

_____

Houston M. Goddard, P.J.


CONCUR:




_____

Herschel P. Franks, J.




_____

William B. Cain, J.