IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

# GINGER TAYLOR WALTER v. JAMES KEENER WALTER

**Direct Appeal from the Chancery Court for Greene County**
**No. 95-50     Thomas R. Frierson, II, Judge**

---

**No. E1999-00996-COA-R3-CV - Decided May 23, 2000**

---

This appeal arises from a petition to change custody of the parties' two minor children.  The Father filed suit in the Chancery Court for the change of custody, and the Court granted the relief sought.  On this appeal, the Mother takes issue with the Chancery Court's decision insisting the proof did not warrant a change of custody.  We affirm the Chancery Court's judgment and remand for such further proceedings as may be necessary.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

GODDARD, P.J., delivered the opinion of the court, in which FRANKS and SUSANO, JJ. joined.

J. Russell Pryor, Greeneville, Tennessee, for the appellant, Ginger Taylor Walter.

Linda Thomas Woolsey, Greeneville, Tennessee, for the appellee, James Keener Walter.

## OPINION

This is an appeal from an order to change custody of two minor children: Justin Chad Walter, born June 16, 1982, and Erin Joy Walter, born January 16, 1989.  The Appellant, Ginger Taylor Walter, seeks to reverse the judgment of the Trial Court granting custody to her husband, James Keener Walter, the Appellee.

The Mother presents the following issues, which we restate, on appeal:

1.  Whether the Trial Court applied the incorrect legal standard for a change of custody case.

2. Whether the circumstances upon which the Trial Court
based its decision rose to the level of a material change
of circumstances.

3. Whether the Trial Court erred in not holding the Appellee
in contempt and in not eliminating his visitation.

We affirm the judgment of the Trial Court and remand for any further proceedings consistent with this opinion.

The parties were divorced on November 1, 1995, and at the time of the divorce, the Mother was awarded custody of the children. On April 17, 1998, the Father petitioned the Court for a change of custody . The Trial Court ordered a change of custody from the Mother to the Father based on the following reasons:

The Court further finds by a preponderance of the evidence that
since the time of the divorce, Mrs. Walter has continued to
smoke in her home while in the presence of the children all
in violation of this Court's specific directive. On occasion she
has used profane language in their presence and has allowed
male employees to visit during "pay per view" wrestling events,
thereby creating boisterous environments. One such occasion
resulted in damage to an interior wall in the home of Mrs.
Walter. Further, the Court specifically finds that Mrs. Walter
has failed to maintain a safe and healthy home environment for
extended periods by allowing the yard to be unmowed and trash
to accumulate on the back porch . . .. Finally, the Court finds that
Mrs. Walter's four pets contribute to an increased degree of
animal hair and soil which impacts the hygiene of the children,
as well as their visiting friends. Another factor considered by
the Court is Justin's preference to live with his father.

First, the Mother argues that the Trial Court applied the incorrect standard for custody modification cases. She asserts that the Court did not refer to more recent case law in which there are more complete definitions of a material change of circumstances. She further contends that the Court fails to describe the "substantial harm" to the children that it seeks to prevent. Therefore, the

-2-

Trial Court erred in ordering a change of custody.

However, the Father argues that the Trial Court applied the correct legal standard in custody modification cases. He insists that although "the Trial Court did not directly cite every case which attempts to deal with the definition of 'change of circumstances' in no way affects the accurateness of the standard set forth by the Trial Court." He maintains that the Trial Court applied the correct legal standard.

Second, the Mother asserts that the circumstances on which the Trial Court based its decision do not rise to the level of a "material change of circumstances." The Mother argues that although the Trial Court ordered both parties not to smoke in the presence of the children, she "knows of no authority whereby the courts are authorized to forbid a citizen to undertake a legal activity in their [sic] own home without any showing that said activity is causing harm to others." Therefore, the Mother insists that her continued smoking does not present substantial harm to the children. In addition, the Mother insists that her use of profane language in the presence of the children was not aimed at the children, and thus, did not cause them any substantial harm.

With respect to the Mother's male visitors, the Mother argues that the children were not present when a wall was damaged by the male visitors, so the incident could not possibly have had an effect on the children. Next, the Mother contends that her failure to mow her yard or remove her trash occurred no longer than a couple of months. She explains that she was unable to have her mower repaired or her trash removed because her car was also broken at the same time. She maintains that her failure to cut her grass and remove her trash had no impact on her children. The Mother further asserts that her home had no more pet hair or animal soiling beyond the ordinary and that her children were not affected by the conditions inside her home. Finally, the Mother asserts that her son's preference to live with the Father may be considered, but it is not a controlling factor. She suggests that because the two children do not get along, it would not be detrimental to split the custody of the children between the parties.

The Father maintains that the circumstances on which the Trial Court based its decision did consist of a change of circumstances. The Father asserts that the Mother "blatantly and unashamedly violated the provisions contained in the original divorce decree when she admittedly smoked in the presence of the parties' minor children on numerous occasions and used profane language in the presence of the said children." The Father noted that on one occasion, the daughter wore her mother's clothing, although it was too big for her, because she had no clean

clothes of her own to wear.  In addition, the Father points out that oftentimes when the children returned to their Mother's home after visitation with him they discovered evidence of parties that the Mother had with young males in her home: beer bottles and once, a hole in the living room wall. The Father further notes that the Mother acknowledges that she allowed a convicted rapist to spend the night while both children were in the home.

The Father also notes that the Mother's yard had become so overgrown and her back porch so full of garbage that neighbors were concerned about rats and bugs, and one neighbor testified that she called the health department to report the situation.  The Father maintains that the conditions at the Mother's home could have adversely affected the children's health and also their self-esteem and self-worth.  He stated that he was concerned about his children's reputation in the community because of the condition of the Mother's home.

The Father argues that he should be awarded custody of the children because he has been employed by the local newspaper for approximately three years, lives in a  neighborhood conducive to rearing children, and attends a local church, where he is a member of the choir and also teaches a class.

Lastly, the Mother contends that the Trial Court erred by not holding the Father in contempt and by not eliminating his visitation.  She argues that in the divorce decree, the Court stressed the importance of preventing the children's exposure to pornography.   The Mother claims that the parties' son found a program entitled "Nasty Pictures" on the Father's computer and found several inappropriate email messages. Also, the Mother asserts that the parties' daughter "has walked in on Appellee while he was on the Internet and he has had to cover up the screen, which at times still did not prevent her from seeing dirty words."

The Father explains that the only allegation against him is the Mother's unsubstantiated allegation that he had exposed the children to pornographic material.  He acknowledges that there was a "bad" program on his computer, but the parties' son explained that this program was probably placed on the computer by a friend of his who had spent the night.  Also, the Father notes that he brought to his son's attention some inappropriate email messages containing pathways to pornographic material, and the two of them deleted  the email messages.  The Father then installed Net Nanny on his computer so that inappropriate materials could not be accessed from his computer. The Father further argues that despite the Mother's argument that the parties' daughter had been exposed to "dirty words," the daughter could not identify what she had seen on the

-4-

computer, except that once it looked like it might have been a dirty word. Therefore, the Father maintains that he has not violated the Court's order prohibiting the children's exposure to pornography.

In a custody case, our review is <u>de novo</u> upon the record accompanied by a presumption of correctness under Rule 13(d) of the Tennessee Rules of Appellate Procedure. We must affirm unless the preponderance of evidence is otherwise. <u>Has v. Knighton</u>, 676 S.W.2d 554, 555 (Tenn. 1984). The noncustodial parent carries the burden to prove changed circumstances. <u>Musselman v. Acuff</u>, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). Tennessee Code Annotated § 36-6-101(a)(1) provides that the decree for custody "shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require."

No definitive rule exists as to what constitutes changed circumstances. <u>Dantzler</u> <u>v.</u> <u>Dantzler</u>, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). "'Changed circumstances' includes any material change of circumstances affecting the welfare of the child or children including new facts or changed conditions which could not be anticipated by the former decree." <u>Dalton v. Dalton</u>, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993) (citation omitted). A party's failure to comply with a Trial Court order prohibiting cigarette smoking may be considered in a change of custody hearing. <u>See</u> <u>Smith v. Smith</u>, an unreported opinion of this Court, filed in Knoxville on October 11, 1996; <u>Gaskill</u> <u>v. Gaskill</u>, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996).

We are disturbed by the Mother's disregard of the Trial Court's order pertaining to smoking and using inappropriate language in the presence of her children and by the presence of individuals who pose a threat of harm to the children in the Mother's home. The record shows that the Mother has failed to maintain a safe and healthy home environment for the children by not mowing the yard for extended periods of time, by allowing trash to accumulate in and around the house, and by permitting animal hair from several pets to accumulate inside the home. Regarding the allegation of exposing the children to pornography, we conclude that the one instance of such exposure was adequately explained by the parties' teenage son and that the Father took appropriate measures to rid his computer of the material and to install a program to prevent such an instance from occurring in the future. Furthermore, a child's preference regarding which parent he or she would like to live with is only one factor in our determination of custody.

We believe that there has been a sufficient change in circumstances established by a preponderance of the evidence to warrant a change in the custody arrangements. The record shows

that the Father can provide a stable, clean, and safe home environment for the children.

Based on the foregoing, we affirm the judgment of the Trial Court. This case is remanded to the Trial Court for such further proceedings as may be necessary and collection of costs below. Costs of the appeal are adjudged against the Mother and her surety.