# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### JULY 8, 2003 Session

## RICKY LEE JENKINS v. HEATHER MICHELE JOHNSON

**Direct Appeal from the General Sessions Court for White County**
**No. CV 3122     Clara W. Byrd, Judge**

_____

**No. M2001-02103-COA-R3-CV - Filed December 3, 2003**

_____

This appeal arises from the lower court's modification of a child custody arrangement.  The trial court found that a material change in circumstances had occurred and awarded primary residential custody to Father.  For the following reasons, we affirm the judgment of the lower court.


**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the General Sessions Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J.,  and DON R.ASH, S.J., , joined.

Thomas F. Bloom, Nashville, TN, for Appellant

Gary W. Dodson, Sparta, TN, for Appellee

## OPINION

### Facts and Procedural History

Ricky Lee Jenkins ("Father") and Heather Michelle Johnson ("Mother") were granted a divorce by the lower court on May 30, 2000.  At this time, both parties lived in White County, Tennessee.  As part of its decree, the trial court ordered that the parties share equal parenting and visitation time with their minor daughter, who was born in January of 1998.  The lower court further ordered that the child be enrolled in Cumberland Family Centers Daycare prior to enrollment in pre-school or kindergarten.  Mother subsequently married Roger Johnson ("Johnson") on July 13, 2000.

On September 13, 2000, Mother filed a petition to modify the final decree of the trial court.  Mother argued that a material change in circumstances had arisen, after entry of the final decree, that entitled Mother to sole custody of the child.  Mother alleged several bases for the modification: Father's failure to obtain proper medical attention for the child's rashes; Father's vile and inappropriate language; and unauthorized trips taken by Father with the child.  In his answer, Father

denied all allegations levied by Mother. Father then filed a counter-petition to modify the final decree, also alleging a material change in circumstances. Father based his claim upon allegations that Mother was living with her romantic partner and had allowed smoking in the presence of the child, both of which were forbidden by the trial court in its decree. He further maintained that Mother generally provided an unhealthy environment for the child, resulting in physical and emotional problems for the child. Mother denied all allegations raised by Father in his counter-petition. During this period, in April of 2001, Mother moved with Johnson to Smithville in De Kalb County, Tennessee. Soon thereafter, Mother learned of a head start educational program for pre-school age children in Smithville that ran all day from Monday to Thursday. Mother argued at trial that the parties' child could attend this program, in lieu of the Cumberland Family Centers Daycare, if she were awarded sole custody.

At trial, the parties' arguments differed somewhat from those raised in the pleadings. Specifically, Mother placed substantial emphasis upon Father's refusal to communicate with her regarding their child. Mother alleged that this failure to communicate contributed to the material change of circumstances that necessitated a modification of the custody arrangement. Upon completion of the trial, the lower court found that a material change of circumstances had, indeed, arisen since the entry of its final decree. The trial court then ruled that the child had adjusted well to her placement at Cumberland Family Centers Daycare in White County and that the child should not be removed from this placement. Accordingly, the lower court awarded primary residential custody to Father, who had remained a resident of White County. Mother then timely filed this appeal challenging the judgment of the trial court.

## Issues

Mother raises the following issues for our consideration:

I.      Whether the trial court erred in awarding primary residential custody to Father despite the fact that Father's conduct rendered the joint custody arrangement unworkable.

II.     Whether the trial court's findings of fact are contrary to a preponderance of the evidence.

Father raises an additional issue for our review:

III.    Whether the instant appeal is frivolous.

## Standard of Review

Our review of the trial court's conclusions on issues of law is *de novo*, with no presumption of correctness. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002). Our review of the lower court's findings of fact is *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W.3d at 569.

## Child Custody Modification

Mother maintains that it was error for the lower court to award primary residential custody to Father. She alleges two bases of error. First, Mother argues that Father should not have been awarded primary custody because it was his behavior that rendered the joint custody arrangement unworkable. She also argues that the evidence preponderates against the findings of fact that underlie the lower court's judgment. We will address each contention in turn.

Mother alleges that a line of Tennessee cases stands for the proposition that, when a parent is responsible for the deterioration of a joint custody arrangement, the trial court is prohibited from awarding that parent primary custody. We disagree. The cases at issue are *Dix v. Carson*, No. 02A01-9704-CV-00093, 1998 WL 886555, at *1 (Tenn. Ct. App. 1998), *DeVault v. DeVault*, No. 01-A-01-9601-CV00012, 1996 WL 482968, at *1 (Tenn. Ct. App. 1996), and *Dalton v. Dalton*, 858 S.W.2d 324 (Tenn. Ct. App. 1993). Mother relies primarily upon the following language in *Dix*: "Thus, the Court [in *DeVault*] found that the mother should not be permitted to, by her behavior, make joint custody unworkable and then be awarded sole custody." *Dix*, 1998 WL 482968, at *12. She maintains that this language codifies a "well-settled" principle, applied in the cases listed above, that "the party who renders the joint custody arrangement unworkable by his or her behavior **cannot** receive sole custody." We find that Mother's argument mischaracterizes our holdings in these cases.

We note, as an initial matter, that child custody determinations are concerned solely with the needs of the children. *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986); *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). A court should never use custody to punish or reward the parents. *Gaskill*, 936 S.W.2d at 630. Instead, a court should promote the interests of children by placing them in the environment that provides the best emotional and physical support. *Id*. Tenn. Code Ann. § 36-6-106 (2003) provides certain factors to consider when determining which custody arrangement will best serve a child's needs. One of the factors to be considered is "each parent's past and potential for future performance of parenting responsibilities." Tenn. Code Ann. § 36-6-106(a)(10).

In the cases relied upon by Mother, our holdings do not create a rule that conclusively determines the outcome of a custody proceeding. Instead, these holdings take into consideration, as one factor among many, the willingness of a parent to communicate with another about the rearing of their child. The willingness to communicate reflects upon a parent's ability to effectively fulfill his or her parenting responsibilities. This, in turn, informs the court's determination of what custody arrangement promotes the best interest of the child. Accordingly, a court properly considers a parent's reluctance or refusal to communicate with the other parent. This factor, however, is but one of many to be considered and does not provide a conclusive answer to a court's inquiry by itself.

-3-

There was no error, therefore, when the lower court considered this factor, yet still awarded primary custody to Father.

Mother next argues that the lower court's findings of fact are against the preponderance of evidence. She first maintains that the lower court erred in finding that both parents are "real good parents." According to Mother, the evidence indicates that Father is a violent person who uses inappropriate language in front of the child. The evidence does indicate that Father's ex-wife brought an assault charge at one time. However, the evidence also indicates that this occurred more than ten years ago. Mother was further unable to adduce any additional credible evidence to persuade the trial court that Father posed any physical or emotional threat to their child. We bear in mind that trial courts are in the best position to "observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility." *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). If Mother failed to persuade the lower court, through her testimony, that Father was anything but a loving parent, we will not disturb this finding.

Mother also maintains that there was no evidence to support the trial court's conclusion that the child is thriving in the Sparta daycare. She bases this conclusion on the fact that the child once slapped a teacher at the daycare. Considering that this is a single act by a toddler, we cannot say that this basis provides much support for Mother's argument. We also note that the record indicates the child appeared before the lower court and was found to be "a very bright three-year-old, very articulate" who seemed "very well-adjusted." Further, the lower court had the opportunity to observe the testimony of a worker from Cumberland Family Centers Daycare regarding the status of the parties' child at that facility. This testimony supported the conclusion of the lower court. In sum, we find Mother's contentions on this issue without merit. The evidence does not preponderate against the lower court's findings of fact.

### Frivolous Appeal

Father raises the issue of whether Mother should be held liable for damages for instituting a frivolous suit. Tenn. Code Ann. § 27-1-122 (2003) provides that:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

This statute must be applied strictly so that legitimate appeals are not discouraged. *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001) (citing *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977)). An appeal is only deemed frivolous if it is devoid of merit or without any reasonable chance of success. *Wakefield*, 54 S.W.3d at 304. We find that Mother's appeal, though ultimately unsuccessful, is not so lacking of merit as to be deemed frivolous. As such, we decline to award damages to Father.

## Conclusion

For the foregoing reasons, we affirm the judgment of the lower court. Costs of appeal are taxed to the Appellant, Heather Michele Johnson, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE