IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 2000 Session

# LARRY L. WILSON v. KIMBERLY TITTLE

**An Appeal from the Circuit Court for Sumner County**
**No. 17344C    Arthur E. McClellan, Judge**

---

**No. M2000-00115-COA-R3-CV - Filed August 25, 2000**

---

This is a child custody case. The mother and father, who were never married, had a child in Tennessee. The mother subsequently married another man and filed petitions in a Tennessee court to establish paternity of the child and for adoption by the stepfather. During the pendency of the suit, the mother and stepfather moved with the child to Texas. The Tennessee court awarded custody of the child to the mother but denied the mother's petition for adoption. The court awarded the father visitation. Later, the father filed petitions in the Tennessee court for contempt and for change of custody, arguing that the mother had refused to allow him visitation. Mother subsequently filed a petition in a Texas court to modify the Tennessee court's prior order. The Tennessee court found that the mother's denial of the father's visitation rights was a substantial change of circumstances and that the best interests of the child favored an award of custody to the father. The mother appeals. We affirm.

**Tenn.R.App.P. 3; Judgment of the Circuit Court is Affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Thomas L. Whiteside, Nashville, Tennessee, for the appellant, Kimberly Tittle.

D. Scott Parsley, Nashville, Tennessee, for the appellee, Larry Wilson.

## OPINION

Plaintiff/Appellant Kimberly Tittle ("Mother") and Defendant/Appellee Larry Wilson ("Father") are the parents of Jessica Elizabeth Wilson ("Jessica"), born December 11, 1992. Jessica was born in Henderson, Tennessee. Mother and Father never married.

Mother and Father apparently lived together for a period of time after Jessica was born. Subsequently, Mother married Tommy Tittle ("Stepfather"). At a later point, Mother filed a petition to legitimate Jessica in the Sumner County Juvenile Court in Sumner County, Tennessee. After

Father's answer to the petition, Mother filed petitions in the Sumner County Circuit Court ("trial court") to establish paternity of Jessica and for adoption by stepfather. The proceedings in Juvenile Court were then stayed. During the pendency of Mother's action in the trial court, Mother and Stepfather moved with Jessica to Austin, Texas. Father appeared in Mother's action in the trial court.

On September 25, 1996, the Tennessee trial court entered an order denying Mother's petition for adoption. In the order, the trial court found that Father was Jessica's biological father based upon blood test evidence and upon Father's acknowledgment of paternity. It also found no evidence to support a finding that Father had abandoned the child. The trial court awarded Father visitation for one week each month and for an extended period during the summer and ordered Father to pay child support of $81.90 per week in accordance with the Child Support Guidelines. The trial court ordered Mother to bear the costs of transporting the child between Texas and Tennessee for Father's visitation based on its finding that Mother had voluntarily left the jurisdiction.

On December 2, 1996, the Tennessee trial court entered an order granting Mother full custody of Jessica. This order also granted Father visitation for one week each month and ordered Mother to bear the costs of transporting Jessica between Texas and Tennessee.

On September 4, 1997, Father filed a petition in the Tennessee trial court for contempt and for a change of custody. In the petition, Father asserted that Mother, from May 1997 to August 1997, had refused to allow him visitation for one week each month with Jessica, and that Mother had not allowed him extended visitation during the summer of 1997. Father asked the trial court to hold Mother in contempt of the trial court's orders and issue a restraining order enjoining Mother from removing Jessica from Texas. Father also argued that Mother's conduct since the trial court's September 1996 order constituted a material and substantial change in circumstances justifying a change in custody. On September 4, 1997, the Tennessee trial court entered a temporary restraining order enjoining Mother from removing Jessica from Texas pending further order by the trial court.

On October 14, 1997, Mother filed a motion in the Tennessee trial court to dismiss Father's petition for custody and to vacate the Tennessee trial court's restraining order. In the motion, Mother argued that the Tennessee trial court lacked jurisdiction in the case. She asserted that Texas, not Tennessee, was Jessica's home state because the child had resided there for more than six months prior to the filing of Father's petition for custody.

On October 16, 1997, Mother filed a petition in the District Court of Travis County, Texas, seeking to modify the Tennessee trial court's September 1996 and December 1996 orders. Through a subsequent amended petition, Mother asked the Texas court to modify the custody and visitation provisions of the trial court's orders to conform with the Standard Possession Order provided in the Texas Family Code. In a supporting affidavit, Mother stated that she and Jessica had lived in Austin, Texas, with Stepfather, since February 1996. Father was served in the Texas action but did not appear.

On October 27, 1997, the Tennessee trial court entered an order denying Mother's motion to dismiss, finding that it had jurisdiction over Jessica. In the order, the Tennessee trial court noted Mother's petition in the Texas court but stated that the Tennessee trial court retained jurisdiction in the case in spite of Mother's Texas action.

On December 2, 1997, the Texas court issued an order granting Mother custody of Jessica and awarding Father visitation. The Texas court ordered Father to pay child support of $338.00 per month through the Texas court. The Texas court expressly found that it had jurisdiction in the case "and that no other court has continuing exclusive jurisdiction."

On December 29, 1997, in the Tennessee trial court, Mother renewed her motion to dismiss for lack of jurisdiction, citing the issuance of the Texas court's order on December 2, 1997. In the motion, Mother maintained that Texas was Jessica's home state based on the child's continued residency in that state. Mother asserted that the Texas court had assumed jurisdiction in the case concerning all questions of law and fact pertaining to Jessica's custody, visitation, and child support.

On December 31, 1997, Father filed a motion asking the Tennessee trial court to contact the Texas court to determine whether the Texas court had properly exercised jurisdiction in the case. In his motion, Father asserted that the Tennessee trial court acquired jurisdiction in the case prior to Mother's petition in the Texas court. On January 9, 1998, Mother responded to Father's motion, asserting that the Texas court had properly exercised jurisdiction because Texas was now Jessica's "home state" under 28 U.S.C. § 1738A and the Parental Kidnapping Prevention Act of 1980, Pub. L. 96-611, 94 Stat. 3508. On January 20, 1998, the Tennessee trial court entered an order stating that it would contact the Texas court to discuss which court had properly exercised jurisdiction in the case.

On November 2, 1999, the Tennessee trial judge held a hearing in which he told attorneys for both Mother and Father that he had spoken with Judge Deborah Richardson of the Texas court. The Tennessee trial judge informed the attorneys that Judge Richardson had told him that Texas had never accepted jurisdiction over Jessica, that Judge Richardson did not consider Texas to be the child's home state, and that Texas was declining jurisdiction in the case. The Tennessee trial judge stated that Judge Richardson planned to enter an order to that effect and would send a copy of the order to the Tennessee trial court. A letter from Judge Richardson subsequently received by the Tennessee trial court stated:

> . . . we have no pending matters regarding the Child, Jessica Elizabeth Wilson in Cause Number: 97-11841 in the 226th Judicial District Court in Travis County, Texas. The Tennessee divorce decree was modified in that cause number by default here on December 2, 1997 under Texas' old UCCJA Statute. Texas enacted a new UCCJEA Statute on September 1, 1999 . . . . Under the new statute, Texas recognizes exclusion [sic] continuing jurisdiction for the state entering the decree.

No order from the Texas court declining jurisdiction appears in the record on appeal. On November 15, 1999, the Tennessee trial court entered an order stating that it was accepting jurisdiction in the case as Jessica's home state. The Tennessee order set a hearing date on December 16, 1999, to consider Father's petitions for contempt and for custody of Jessica. The Tennessee order stated that "counsel for Mother must notify his client personally to be present on this date and if she is not present or elects not to be present on that date, that she must have the child present on [that date].

On December 16, 1999, the Tennessee trial court held a hearing to consider Father's petitions for contempt and for a change of custody. Father was present at the hearing, but neither Mother nor Jessica appeared. Mother's attorney stated that he felt that Mother did not appear because she believed that she had custody of the parties' child through a valid order from the Texas court, that the Tennessee trial court did not have jurisdiction in the case, and that Mother feared the Tennessee trial court's custody decision would be unfavorable. Mother's attorney renewed Mother's objection to the Tennessee trial court's jurisdiction to hear the case. The Tennessee trial court proceeded with the hearing in Mother's absence.

At the hearing, Father testified that he lives in Madison, Tennessee, just outside of Nashville, in a home with his mother and sister. Father stated that he is an audio engineer and that his work requires overnight travel for four days each week.

Father testified that Mother had told him on numerous occasions that he would be permitted to see Jessica, only to later renege. Father stated that, in April 1997, he and Mother made arrangements for Mother to bring Jessica to Tennessee to visit for two weeks. Father said the visit never occurred. Father testified that he made arrangements through his attorney to travel to Texas to see Jessica in October 1997. He stated that he purchased airline tickets and rented a car and a hotel room but that Jessica was not there when he attempted to see her. Father stated that Mother also told him that he could see Jessica on Thanksgiving of 1999 but that he was eventually not allowed to do so.

Father testified that he enjoys a good and loving relationship with Jessica in spite of the limited time he has been allowed to spend with her. He stated that he talks with Jessica over the telephone when Mother allows him to do so. Father stated that he tried on numerous occasions to work out a visitation schedule with Mother, but that she refused to cooperate, asserting that the Texas court has jurisdiction.

On December 22, 1999, the Tennessee trial court entered an order denying Mother's motion to dismiss for lack of jurisdiction and granting Father's petition to change custody. In the order, the Tennessee trial court noted that Mother's arguments at the December 16, 1999 hearing concerning jurisdiction were the same as those preceding the Tennessee trial court's orders in October 1997 and November 1999, in which the Tennessee trial court had determined that it had

jurisdiction over the case. The Tennessee trial court again found that it had jurisdiction as Jessica's home state. Regarding Father's petition to change custody, the Tennessee trial court stated:

> The Court finds from the testimony of the Father and a review of the record in this matter that the Petition to Change Custody is well taken.

> * * *

> The Court specifically finds that there has been a material and substantial change in circumstances justifying a change in custody and that such a change is in the best interest of the minor child. The Court finds the testimony as concerns the change of custody is undisputed, that Mother has attempted and has actually destroyed the bond between Father and . . . Jessica . . . . The Court finds that Mother has continuously engaged in a course of conduct that has precluded the father/daughter relationship from continuing. It is further the Court's finding that such activity on the part of Mother, in conjunction with the affirmative efforts on the part of Father to continue his relationship does, in fact, constitute a material and substantial change in circumstances from the date of the original order . . . on September 25, 1996, to present to justify a change in custody.

The Tennessee trial court found Mother in contempt for her obstruction of Father's visitation. It also noted that Mother did not appear at the hearing after being personally notified by her attorney of the Tennessee trial court's requirement that she do so. The Tennessee trial court ordered Mother to deliver Jessica to Father's custody in Nashville, Tennessee, on or before December 24, 1999. From this order, Mother now appeals.

On appeal, Mother argues that the Tennessee trial court lacked jurisdiction to hear Father's petition to change custody. Mother contends that, under Tennessee's Uniform Child Custody Jurisdiction Act, Texas is Jessica's "home state" and, thus, Tennessee does not have jurisdiction to hear Father's petition. Mother states that Jessica had resided in Texas more than one year prior to the filing of Father's petition to change custody. She also asserts that the Texas court properly exercised jurisdiction over her petition in that court and that it did not expressly decline jurisdiction in its letter to the Tennessee trial court.

Father argues that the Tennessee trial court had jurisdiction to hear his petition to change custody based on the Tennessee trial court's September 1996 and December 1996 orders establishing Father's visitation rights. Father contends that jurisdiction is proper in Tennessee because Mother voluntarily filed her original petitions to establish paternity and for adoption in Tennessee, because Jessica was born in Tennessee, and because Father continues to reside in Tennessee. Father also asserts that the Texas court declined jurisdiction in its discussion with the Tennessee trial judge.

-5-

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. *See* Tenn.R.App.P. 13(d). We review questions of law with no presumption of correctness in the trial court's decision. *See State v. Levandowski*, 955 S.W.2d 603, 604 (Tenn. 1997).

Section 36-6-203(a)(3) of Tennessee's version of the Uniform Child Custody Jurisdiction Act ("UCCJA"), Tenn. Code Ann. § 36-6-201 through -225 (1996) (repealed 1999),[1] provides that a court of this state has jurisdiction to make a child custody determination by modification decree if: (1) all other states have refused jurisdiction on the ground that Tennessee is the more appropriate forum to determine child custody, and (2) it is in the best interest of the child that a court of this state assume jurisdiction. *See* Tenn. Code Ann. § 36-6-203(a)(3).

In this case, the Texas court's letter to the trial court states that it had no pending matters regarding Jessica and that, under Texas' new child custody jurisdiction statute, the UCCJEA, it recognizes exclusive jurisdiction for the state entering the decree. The letter from the Texas court does not indicate whether Texas recognized the Tennessee trial court's exclusive jurisdiction under the old statute, the UCCJA. No order from the Texas court expressly declining jurisdiction appears in the record on appeal. Nevertheless, the Tennessee trial judge informed the parties' attorneys of his discussion with the Texas judge in which the Texas judge stated that Texas had never accepted jurisdiction over Jessica, that Texas was not the child's home state, and that Texas was declining jurisdiction in the case.[2] Mother chose to file her original petitions to establish paternity and for adoption in Tennessee. Father, who had repeatedly attempted to exercise visitation with Jessica consistent with the Tennessee trial court's September 1996 and December 1996 orders, continues to reside in Tennessee. Consequently, we find that the Tennessee trial court did not err in assuming jurisdiction under Section 36-6-203(a)(3) of the UCCJA to consider Father's petition to change custody. We affirm the trial court on this issue.

Mother argues that the Tennessee trial court erred in changing custody of Jessica to Father. Mother contends that the only evidence presented at trial concerned her failure to comply with the visitation provisions of the Tennessee trial court's orders. She asserts that such evidence is insufficient to warrant a change of custody. Father argues that the evidence produced at the hearing in Tennessee supports a finding that Mother's denial of Father's visitation rights created a

---

[1] Tennessee's current statute, the Uniform Child Custody Jurisdiction Enforcement Act, provides that "[a] motion or other request for relief made in a child-custody proceeding or to enforce a child-custody determination which was commenced before June 14, 1999, is governed by the law in effect at the time the motion or other request was made." Tenn. Code Ann. § 36-6-243 (Supp. 1999).

[2] The UCCJA permits the Tennessee judge and the judge in the other state at issue to discuss jurisdiction by telephone, outside the presence of the parties' attorneys and without a written record. In situations in which the trial court must act quickly, this is necessary. However, in a situation such as the instant case, it is preferable to obtain a written order from the state declining jurisdiction.

substantial change of circumstances warranting a change of custody and that a continued relationship between Father and Jessica is in the best interest of the child.

The issue of child custody is reviewed *de novo*, with a presumption of correctness in the trial court's findings of fact, unless the evidence preponderates against them. *See* Tenn.R.App.P. 13(d). The best interest of the child is the primary concern. *See* Tenn. Code Ann. § 36-6-106 (Supp. 1999); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The trial court must also consider the factors set forth in Tennessee Code Annotated § 36-6-106 (Supp. 1999).[3] In a proceeding involving a petition to modify a prior custody order, the party seeking a change of custody has the burden of proving a material change in circumstances compelling enough to warrant such a change. *See Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991); *see also* Tenn. Code Ann. § 36-6-101(a)(1) (providing that custody orders remain within the control of the court and subject to such changes or modification as the exigencies of the case may require). A change of circumstances warranting a modification of custody includes "any material change of circumstances affecting the welfare of the child" and requires a showing of "new facts or changed conditions which could not be anticipated by the former decree." *McReynolds v. McReynolds*, No. 01A01-9702-CH-00064, 1997 WL 607516, at *4 (citing *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App.1993)).

---

[3]Tennessee Code Annotated § 36-6-106 provides that the following factors be considered in child custody cases:

(1) The love, affection and emotional ties existing between the parents and child;
(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . .;
(4) The stability of the family unit of the parents;
(5) The mental and physical health of the parents;
(6) The home, school and community record of the child;
(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . .;
(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.
(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

*Id.*

In this case, the facts concerning Mother's custody of Jessica from the time of the Tennessee trial court's initial order until Father filed his petition to change custody are sparse, in large part because of Mother's failure to appear at trial or to allow Jessica to appear at trial. On the other hand, the record on appeal reflects that Father has made continued efforts to maintain a relationship with his daughter and that Mother has actively obstructed Father from seeing Jessica. Father testified that he has a good relationship with Jessica, despite the limited time the two have spent together. Father also testified that he is employed and has a good home for Jessica in Tennessee.[4] Based on the evidence contained in the record, this Court cannot find that the trial court erred determining that Mother's obstruction of Father's exercise of his visitation rights represents a change of circumstances justifying a change of custody and that an award of custody to Father is in the child's best interest. Consequently, we affirm the trial court's custody award to Father.

In summary, we find that the Tennessee trial court had jurisdiction to consider Father's petition to change custody. We cannot conclude that the trial court erred in finding that Mother's denial of Father's visitation rights created a substantial change of circumstances warranting a change of custody to Father, and that an award of custody to Father is in the child's best interest. The trial court's award of custody to Father is affirmed.

The decision of the trial court is affirmed. Costs are assessed against the Appellant, Kimberly Tittle, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD

---

[4]Cases such as this frequently include evidence regarding the child's bond with the custodial parent and the effect on the child of uprooting him or her in order to change custody. However, the Tennessee trial court was not given the benefit of such evidence because Mother declined to appear at the Tennessee hearing and did not have Jessica appear at the hearing.